**Pearl BRUMMETT, Sidney Farney, Grace Stoller, and Josephine Farney, Plaintiffs-Appellants,**

v.

**Norbert PILOTTE, Defendant-Appellee.**

**No. 2–978A323.**

Court of Appeals of Indiana, Fourth District.

June 25, 1979.

Marcel Katz, Lafayette, for plaintiffs-appellants.

Joseph T. Bumbleburg, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for defendant-appellee.

YOUNG, Judge.

Plaintiffs Brummett, et al., (Brummett) sued to eject Pilotte from Brummett's farm. Judgment was entered in favor of Brummett on March 30, 1973. Pilotte appealed and gave a supersedeas bond which was approved by the trial court April 9, 1973. Thereafter, Pilotte remained on the farm until February 28, 1974. On August 18, 1975, this Court affirmed the judgment of ejectment. *Pilotte v. Brummett*, (1975) 165 Ind.App. 403, 332 N.E.2d 834.

The 1973 crop year fell within the pendency of the prior appeal. During that year Pilotte farmed the land as he had done prior to the judgment of ejectment. And, in the same fashion as called for by their prior agreement, Brummett received one-half the sale price of the 1973 crop. The trial court found that this amounted to $25,250. The court determined that Brummett also was entitled to the additional amount of $5,074 to compensate Brummett for attorney fees, weed control measures, and deprivation of use of the farm residence, less $1,595 paid by Pilotte for certain farm expenses. The net amount, $3,479, plus interest, was ordered to be paid by Pilotte to Brummett. This allocation of damages is correct and we affirm.

Brummett, however, disputes this damage award. She contends that for the pendency of the prior appeal she is entitled not only to her customary landlord's half share of the 1973 crop, $25,250, but also to the share which was retained by the tenant Pilotte. She bases this claim on the fact that she prevailed in the prior appeal.

The issue, therefore, is the extent of Pilotte's liability for having retained possession of the farm during a portion of the pendency of the appeal. Neither party has located Indiana authority which squarely answers this issue. Trial Rule 62 of the Indiana Rules of Procedure gives guidelines for determining the size of a supersedeas bond. However, the rule does not specify the elements of damage, if any, which may be recovered by Brummett. The same is true of the rule's statutory predecessor, Burns' Ind.Stat.Ann., § 2–3204 (1968 Repl.).

Indiana case law is inconclusive. Brummett, for example, points to cases such as *McCaslin v. State ex rel. Auditor of State,* (1885) 99 Ind. 428. In *McCaslin* the Court said that "[w]here, as in this case, the plaintiff in ejectment recovers the land, he is entitled to the crops thereon, growing or cut and shocked thereon, which were planted after the action was commenced. 99 Ind. 442. While this language superficially may apply to the case at bar, *McCaslin* is nonetheless distinguishable. In contrast to the case at hand, the Court in *McCaslin* was not confronted with a tenant farmer who had remained on the land during the pendency of an appeal and had posted an appropriate bond. *Sherry v. State Bank of Indiana,* (1855) 6 Ind. 397, suggests that a tenant in possession during the pendency of an appeal is liable for mesne profits. Keeping in mind that "mesne profits" is a tool of equity, *Semple v. Bank of British Columbia,* (C.C.Or.1879) 21 F.Cas. No. 12,660, pp. 1068, 1072, and thus is to be applied in an equitable manner, *Sherry* gives no specific guidelines for the case at hand. *Semple v. Bank of British Columbia, supra* (mesne profits may not mean gross product of land).

Turning to other authorities, we find that the issue before us was discussed in a related context in Annot., 95 A.L.R. 1127 (1935), where the following statement was made:

"As a background to a consideration of the present subject, it may be generally observed that the policy of the law, at least as relates to bona fide acts, seems to be to uphold the right of an occupant of land to crops planted and harvested by him, notwithstanding a pending controversy involving the right to possession and a subsequent determination that title or right to possession was in another. *In such a case the liability to account for the reasonable value of the use and occupancy generally results in substantial justice to the party legally entitled to possession, without more*; while, on the other hand, to cast title to severed crops upon whosoever might prevail in a contest of title would result in hardships and in uncertainty, unnecessarily interfering with agricultural activities."

95 A.L.R. 1127 (emphasis added). Similarly, it was stated in Annot., 113 A.L.R. 1059 (1938), as follows:

"True, the law should lend no encouragement to one who, holding wrongful possession of land, expends money or labor thereon through pure impudence; but, on the other hand, it seems that the cultivation of agricultural lands ought to be encouraged notwithstanding the pendency of a bona fide controversy, or actual litigation, concerning the title or continued right to possession. There are obvious ways of making a successful litigant whole without forcing his merely mistaken adversary in possession to depart from the ordinary course of good husbandry in the management of the premises contended for.

" .   .   .

"From the annotations, and other authorities, above referred to, it would seem that if the tenant succeeds in remaining in possession until after harvest, he would, under the general doctrine, be chargeable merely with damages consisting of rental value, or with mesne profits,

*but would not be liable for both crops and rent for the same period of time."*
113 A.L.R. 1061 (emphasis added).

These principles were illustrated in *Woodcock v. Carlson*, (1889) 41 Minn. 542, 43 N.W. 479. In *Woodcock* the court was called upon to discuss the liability of a tenant farmer who remained on the farm during the pendency of an appeal. This is the same issue before us. The tenant farmer had suffered a negative judgment in the landlord's action of detainer to recover possession. Thereafter he gave an appropriate bond, remained in possession, and received an adverse decision from the appellate court. With respect to the measure of the landlord's recovery, the court said:

"In case a defendant appeals, he is entitled to a stay of proceedings, and to remain in possession upon giving, as Duryea did in this instance, a bond conditioned for the payment of 'all rent and other damages justly accruing to the complainant during the pendency of such appeal.' It is immaterial whether this refers to rent, as such, according to the terms of the lease, or the actual rental value of the premises in the nature of damages; for in either case it implies that it is to be the measure of his damages, and its recovery his only remedy for the unlawful withholding of the possession. Certainly the landlord cannot be entitled to rent for the land, and also to all its products; and yet such would seem to be the logical result if defendant's contention be correct. If all the crops raised by the tenant, as the result of his own labor, during the pendency of a protracted and perhaps honestly contested litigation over the possession, belong to the landlord in case of his success in the suit, then the right of appeal is of less than doubtful value. We do not think the statute contemplates any such thing."

Applying this authority to the case at hand, we conclude that Pilotte is liable to Brummett for the rental value of the farm from the date of judgment until surrender of possession. Pilotte is not liable for the entire product of the farm,

contrary to Brummett's assertion. Furthermore, we conclude that the trial court applied a reasonable standard to measure the rental value. This standard was to divide equally the sale price of the crops, and was the same standard employed by the parties for prior years. Thus, the trial court did not err by failing to award Brummett the tenant's share of the 1973 crop.

Brummett has raised some additional issues. Her second issue is that the trial court erred by admitting certain testimony concerning Pilotte's farm expenses. She asserts this to be error because these expenses were the subject of a separate, pending lawsuit. This was the sole basis of her objection at trial. Our review of this issue is therefore confined to this particular basis for the objection.

We note that Brummett initiated the present proceeding to assess damages against Pilotte. Nonetheless, Brummett's appellate brief contains no explanation of the extent which the complained of testimony worked a reduction of those damages sought by Brummett. Brummett has not specifically demonstrated how she was prejudiced by such testimony and she has not explained the manner in which the testimony diminished her award of damages. The relevant portion of the record is replete with references to various bills of unspecified amounts. Brummett has not demonstrated with the clarity necessary to reveal reversible error that the testimony in question did in fact serve as the basis for the reduction in the award of damages. Consequently, we cannot reverse on this issue because "before an error in the admission or rejection of evidence may justify reversal, the error must relate to a material matter or be of a character to substantially affect the rights of the parties." *Lovko v. Lovko,* (1978) Ind.App., 384 N.E.2d 166, 173 (transfer pending). "This Court will not reverse a judgment for an error concerning the admission of evidence unless there is a showing by the party opposing such evidence that he was prejudiced thereby." *Brademas v. Real Estate Dev. Co.,* (1977) Ind.App., 370 N.E.2d 997, 1000. In light of

this standard there is no reversible error. We also note that on redirect examination of the same witness, Brummett's own counsel elicited the information that certain of the expenses supposedly were the subject of the separate lawsuit. Brummett has thereby negated the basis for her earlier objection and any error is waived. *French v. State,* (1977) Ind., 362 N.E.2d 834, 839. Finally, Brummett has failed to cite any portion of the record to reveal that the existence of this other lawsuit was actually proved, *see Fletcher Savings & Trust Co. v. American St. Bank* (1925), 196 Ind. 118, 147 N.E. 524, 530, thus the trial court and this one may properly reject Brummett's claim of error.

■ Brummett's third contention is that the trial court erred by allowing Pilotte a credit for certain farm expenses. These expenses were incurred for the production and harvest of the 1973 crop. The only objection made by Brummett in her motion to correct errors and supporting memorandum was that she had not agreed to these expenses. Our review, of course, is limited solely to this basis for the objection. *Guardiola v. State,* (1978) Ind., 375 N.E.2d 1105; *Daly v. Nau,* (1975) Ind.App., 339 N.E.2d 71, 77. We need not entertain other asserted bases for the objection.

■ As we have discussed at length above, the 1973 crop year fell within the pendency of the appeal. Pilotte remained on the farm during the 1973 crop year by virtue of having given an appropriate supersedeas bond. The credit for the farm expenses must, therefore, be viewed within this larger context. Consequently, under these particular circumstances, the absence of Brummett's consent, alone, did not invalidate the expenses, without some showing by Brummett that Pilotte's contraction of the expenses was as a matter of law contrary to sound farming practice. Brummett, however, has not met this burden in her brief. Brummett has not demonstrated error.

■ Brummett's final contention is that the trial court erred by excluding testimony on the value of the 1973 wheat crop. Although the record is not entirely clear the wheat evidently had been sold in July of 1973. Brummett sought to introduce testimony as to the sale price of wheat for September 9, 1973. The court sustained Pilotte's objection. Brummett made no offer to prove the relevance, competence, or materiality of the proffered testimony. Absent such a showing in the trial court, we can find no error in the court's ruling. "Since the Appellant's offer to prove did not show the relevancy or materiality of the proffered testimony, we can find no abuse of discretion in the trial court's ruling." *Tope v. State,* (1977) Ind., 362 N.E.2d 137, 142. Failure to make an appropriate offer of proof waives error. *Gradison v. State,* (1973) 260 Ind. 688, 300 N.E.2d 67, 80; *State v. Lonergan,* (1969) 252 Ind. 376, 248 N.E.2d 352, 353; *Wright Mfg. Corp. v. Scott,* (1977) Ind.App., 360 N.E.2d 2, 11–12; *Christian Super Chevrolet Corp. v. State,* (1976) Ind. App., 346 N.E.2d 602, 604.

Affirmed.

CHIPMAN, P. J., and MILLER, J., concur.