**John ANDERSON and Betty Anderson, Appellants–Plaintiffs,**

**v.**

**PRE–FAB TRANSIT COMPANY, INC., Charles A. Hunter, and Clyde Gillespie, Appellees–Defendants.**

No. 3–879A234.

Court of Appeals of Indiana, Fourth District.

Sept. 15, 1980.

Rehearing Denied Dec. 3, 1980.

er's truck was owned by appellee Clyde Gillespie and leased to appellee Pre–Fab Transit Company. The case was tried to a jury which found for the appellees and against Mr. Anderson on his complaint and against Mrs. Anderson on her loss of consortium complaint. On appeal the Andersons challenge numerous rulings made by the trial court. We reverse.

The Andersons have raised the following issues:

I. Whether the trial court properly instructed the jury;

II. Whether the trial court abused its discretion in admitting certain testimony of Herman Arnold;

III. Whether the trial court erred in granting a directed verdict in favor of Clyde Gillespie.

The Andersons have also raised other issues but we need not discuss them in light of our decision to reverse.[1] We will, however, address issues raised that are likely to resurface upon retrial.

## FACTS

On the morning of September 15, 1975, Mr. Anderson was heading west on Ley Road in the City of Fort Wayne. His vehicle was struck by the northbound truck driven by Charles Hunter at the intersection of Ley Road and State Road 3. This intersection is controlled by automatic traffic signals. At trial both drivers claimed they had the green light. The right front of Hunter's truck struck the driver's door of Anderson's truck. Both vehicles sustained property damage and Anderson suffered personal injuries and was hospitalized. Hunter was ticketed for disregarding an automatic signal and subsequently pled guilty.

In May of 1977, the Andersons filed suit against the appellees alleging Hunter was negligent in disobeying an automatic signal,

John C. Grimm, Grimm & Grimm, David A. Kruse, Kruse & Kruse, Auburn, for appellants–plaintiffs.

Edward L. Murphy, Jr., and Richard P. Samek, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for appellees–defendants.

CHIPMAN, Judge.

The appellant, John Anderson, was injured when his truck collided with the truck driven by appellee Charles Hunter. Hunt-

---

1. With regard to the appellants' objection to opinion testimony given by Mr. Arnold, see *Rieth–Riley Construction Company, Inc. v.* *McCarrell*, (1975) 163 Ind.App. 613, 325 N.E.2d 844.

violating the speed limit, failing to keep a proper lookout, and failing to brake properly, proximately causing their injuries. The appellees denied Hunter was negligent and alleged Mr. Anderson was contributorily negligent.

At the close of the plaintiffs' case, the court granted defendant Gillespie's motion for a directed verdict. The jury later found in favor of the two remaining defendants.

## I. JURY INSTRUCTIONS

The appellants challenge several of the final instructions given by the court. The first instruction challenged is Defendant's Instruction No. 7 which reads:

"If, after considering all of the evidence, you find that the accident might have been caused in several different ways other than as alleged by plaintiffs in their complaint or the defendants in their affirmative paragraph of answer, and you cannot determine from the evidence what was the proximate cause of the accident, then there can be no recovery by plaintiffs and you may return a verdict for the defendant."

The appellants objected to this instruction on the grounds it was not an accurate statement of the law concerning negligence, contributory negligence and the burdens of proof involved in the case.

Without addressing the specific objections made by the appellants, the appellees argue an almost identical instruction was approved by the court in *Jessop v. Werner Transportation Company*, (1970) 147 Ind. App. 408, 261 N.E.2d 598, and the court's ruling in *Jessop* "is squarely on point" with this case. We disagree.

The court in *Jessop* held the instruction was a proper statement of the law concerning proximate cause. It did not find the instruction was a correct statement of the law concerning negligence, contributory negligence, and burdens of proof. These latter three issues were not addressed by the *Jessop* court because they were not raised by the appellant in that case. As a matter of fact, contributory negligence was not even alleged in the *Jessop* case.

In *Jessop* the appellant challenged the instruction on the grounds it was a mandatory instruction, a mere accident instruction, and it instructed the jury on matters not in evidence. The court upheld the instruction only as to those challenges.

■ The "might have" standard is not a correct statement of the burden of proof faced by each party. The appellants had the burden to prove the material allegations of their complaint by a preponderance of the evidence and the defendants had the burden to prove the material allegations of their affirmative defense by the same preponderance of the evidence. *Egbert v. Egbert*, (1948) 226 Ind. 346, 80 N.E.2d 104. A preponderance of the evidence means the greater weight of the evidence. *Great Atlantic & Pacific Tea Co. v. Custin*, (1938) 214 Ind. 54, 13 N.E.2d 542, *rehearing denied* 214 Ind. 54, 14 N.E.2d 538.

This instruction invites the jury to speculate as to the cause of the accident and to find against the plaintiffs even if the plaintiffs have met their burden of proof if "the accident might have been caused in several different ways other than as alleged by plaintiffs in their complaint." This instruction is biased in favor of the defendant and is not an accurate statement of the law.

■ Although the court did properly instruct the jury as to the appellants' burden of proof by giving Plaintiffs' Instruction No. 6, "We have heretofore held that the error in giving an erroneous instruction cannot be cured by the giving of a contradictory instruction correctly stating the law but the harmful effect of such an erroneous instruction can only be removed by its withdrawal." *Stephenson v. State*, (1963) 244 Ind. 452, 193 N.E.2d 369, 370. *See also Hainey v. Zink*, (1979) Ind.App., 394 N.E.2d 238.

Appellants also objected to the reading of Court's Instruction No. 13 which reads:

"You are instructed that it is negligence for a person to fail to see that which he could have seen by the exercise of ordinary and reasonable care. For that reason the law attaches the same legal consequences to a failure to see what was in plain view if, in fact, the person could have seen.

Therefore, if you find that the semi–tractor trailer operated by the Defendant Charles A. Hunter was in plain view of the Plaintiff and approaching so close as to be unable to stop or avoid colliding with the Plaintiff, at the time the Plaintiff drove into the lane of traffic in which said Defendant was travelling, then you may find that the Plaintiff John W. Anderson was negligent.

Likewise, if you find that the lumber truck operated by the Plaintiff John Anderson was in plain view of the Defendant and approaching so close as to be unable to stop or avoid colliding with the Defendant, at the time the Defendant drove into the lane of traffic in which said Plaintiff was travelling, then you may find that the Defendant Charles A. Hunter was negligent."

Their objection argued the instruction did not state the applicable law to be considered under the circumstances since it made no allowance for the effect the automatic traffic signal may had on either parties' duty.[2]

In their brief the appellants argue *Stull v. Davidson*, (1955) 125 Ind.App. 565, 127 N.E.2d 130, holds "a driver entering an intersection with a favorable green light has no duty, under the test of reasonable care, to anticipate and safeguard against another motorist running or disobeying a red signal on an automatic signal at the intersection." Therefore, they contend the "plain view" instruction was inapplicable in this case.

■ In response the appellees in their brief first argue that "[a] reading of appellants' objection in the trial court reveals that no ground of error was preserved by their non–specivic (sic) instruction." On the contrary, we feel the objection to the instruction was sufficiently specific to preserve the error.[3]

Additionally, the appellees argue this "plain view test has been adopted by Indiana courts as a correct statement of the law," citing *Frankfort v. Owens*, (1976) Ind. App., 358 N.E.2d 184 in which a substantially similar instruction was approved by the court. The appellees also dispute the appellants' interpretation of *Stull* and cite *Davis v. Dondanville*, (1940) 107 Ind.App. 665, 26 N.E.2d 568 as rejecting the appellants' argument.

In resolving this issue, we will first look at the facts involved in this case and then discuss the facts in terms of the relevant case law. It will not be necessary to discuss the "plain view" instruction as it relates to

---

**2.** Additionally, the appellants argue the instruction ignores "a fact beyond rational dispute in the case at bar, namely, that John Anderson, plaintiff, entered the intersection involved with a favorable green light." This delusion permeates the appellants' brief. It evolves from the appellants' failure to acknowledge that Hunter unequivocally testified he entered the intersection with the green light. In their own brief the appellants ask this court to take judicial notice "that a traffic light, working properly, which shows a favorable green light for one direction is, at that time, showing red for the intersecting roadway." If we take judicial notice of this assertion, then by testifying he had the green light, Hunter is certainly disputing the "fact" that Anderson entered the intersection with the green light.

**3.** The appellants made the following objection to the instruction:

"Plaintiffs make objection to Court's instruction number 13 for the reason that said instruction does not state the applicable law to be considered by the Jury as to the legal consequences of failing to see what could have been seen by the exercise of ordinary and reasonable care in that it requires that Plaintiff be bound by the same rules of conduct as Defendant with regard to compliance with automatic signals and does not allow the Jury to consider that Plaintiff entered upon said intersection at a time when he was in compliance with an automatic signal."

Hunter since it cannot be applicable to him.[4]

■ Mr. Anderson's testimony disclosed that he was heading west on Ley Road at approximately 20 miles per hour. There were no obstructions at the intersection which would have blocked his view of Hunter's truck. Anderson saw Hunter's truck approaching the intersection when Anderson was approximately 275 feet from the intersection or about ten seconds before he reached the intersection. When Anderson was approximately 150 feet from the intersection the light turned from red to green.[5] As Anderson proceeded to and into the intersection he did not recheck the progress of Hunter's truck since he assumed Hunter would stop for the red light. When he crossed the first lane of State Road 3 he saw Hunter's truck but it was too late to stop.

As stated above, the appellants argue Anderson was contributorily negligent for not observing the cross–traffic at the intersection since

" '[t]he mere fact that one vehicle has the right of way over another vehicle at a street or road intersection, does not relieve the driver of the vehicle thus favored from the duty to exercise reasonable care to avoid collision at such intersection.' " (citations omitted)

*Davis v. Dondanville*, (1940) 107 Ind.App. 665, 26 N.E.2d 568, 570.

This passage is not dispositive of the issue involved in the case at bar. The passage merely states a driver has the duty to exercise reasonable care to avoid a collision at an intersection. It still leaves reasonable care undefined.

In *Davis* the plaintiff was a passenger in a car that ran a red light and was struck by the defendant's car. The defendant was stopped waiting for the signal to change. When the light changed, the defendant accelerated without looking in front of him and struck the car in which the plaintiff was riding. The plaintiff alleged the defendant failed to keep a proper lookout ahead. In upholding the verdict in favor of the plaintiff, the court said,

"[w]hether or not the appellant was negligent in the operation of his car on the occasion in question by failing to keep a lookout *ahead* for other traffic within the intersection was a question properly submitted to the jury, under the evidence offered in this case." (emphasis added)

*Id.* 26 N.E.2d at 570. This holding clearly is limited to the facts of that case and in the case at bar the evidence is undisputed that Anderson was looking ahead. Therefore, *Davis* is not on point.

■ Fifteen years later the court decided *Stull v. Davidson*, (1955) 125 Ind.App. 565, 127 N.E.2d 130. The plaintiff in this case was also a passenger in a car that collided with the defendant's car at an intersection. The brakes failed in the plaintiff's car and it ran a stop sign causing it to collide with the defendant's car which was not required to stop. In upholding the jury's verdict for the defendant, the court said,

"[i]t is well settled that one who is lawfully using a public highway, in the absence of knowledge to the contrary, has the right to assume that others using it in common with him will use ordinary care to avoid injuring him, nor is such motorist bound to anticipate and safeguard against violations of statutory law or

4. The appellees did not file a counter–claim and therefore the issue of Hunter's contributory negligence is nonexistent. Hunter's negligence is solely determined by whether he had the green light or the red light. If Hunter did disobey the automatic traffic signal, his liability is determined by whether or not Anderson was contributorily negligent. This instruction, even if it was a correct statement of the law, could only have applied to Anderson.

5. For the purpose of this instruction we will have to assume Anderson had the green light since it is a contributory negligence instruction and the jury would only consider it if they found Anderson's light to have been green since he would have been contributorily negligent per se if he had disobeyed the red signal.

negligent operation by other motorists upon the highway." (citations omitted) *Id.* 127 N.E.2d at 136. Again, in the case at bar, there was no evidence Anderson had "knowledge to the contrary," i. e., no evidence Anderson saw anything out of the ordinary which would put him on notice the other motorist, Hunter, would violate the law. Therefore, if Anderson was "lawfully using a public highway," if he had the green light, then he had no duty to look north and south on State Road 3 to see if any of the approaching traffic was going to violate the law.

■ This was the exact holding of the court in *Wallace v. Doan*, (1973) 155 Ind. App. 316, 292 N.E.2d 820. In this case the plaintiff entered the intersection from the preferred street at approximately 20 miles per hour where her vehicle was struck by the defendant's car after he had failed to obey the stop sign. The plaintiff testified she did not look to the left or the right as she approached and entered the intersection. In upholding the trial court's withdrawing the issue of contributory negligence from the jury, the Court said,

> "[t]he law does not require a person lawfully operating a motor vehicle on a preferred street or highway to turn her head and look to the right and to the left before entering and traversing any non-preferred street intersecting the · preferred highway. The only requirement of Doan [the plaintiff] was that she use due care at the time and place in question and act as a reasonable and prudent person would act under the same or like circumstances. She had a right to assume while so driving that any person about to enter or traverse the preferred Walnut Street would obey the law."

*Id.* 292 N.E.2d at 825. Since the plaintiff was not required to look left and right when approaching the intersection while on the preferred street, this precautionary measure must not be mandated under the court's definition of due care under these circumstances.

Chronologically we next come to *Frankfort v. Owens*, (1976) Ind.App., 358 N.E.2d 184, the source of the appellee's "plain view" instruction. In this case the plaintiff was walking across an eight lane street at a crosswalk. A utility truck doing some maintenance work was parked in the street with its front end in the crosswalk. When the plaintiff reached the truck he took one step into the next lane and saw a policeman directing traffic around the truck. Thinking it was safe to proceed, the plaintiff stepped into the next lane and was struck by William Owens, the defendant.

Appellees rely on the instruction upheld by that court as the basis for their "plain view" instruction which was given by the court. The instruction approved in *Frankfort* is set out below:

> "I instruct you that it is negligence for a person to fail to see that which he could have seen by the exercise of ordinary and reasonable care, and for that reason the law attaches the same legal consequences to a failure to see what was in plain view if, in fact, the person had seen.
>
> Therefore, if you find that the defendant William S. Owens, [driver of the car] was in plain view of the plaintiff and approaching so close as to be unable to stop or avoid colliding with the plaintiff, at the time the plaintiff stepped into the lane of traffic in which said defendant was travelling, when you may find that the plaintiff was negligent."

*Id.* at 195.

■ Appellees rely on *Frankfort* as supporting their tendered instruction even though the *Frankfort* court explicitly stated *Wallace* is still a correct statement of the law. At first glance the *Frankfort* court may appear to be contradicting itself but upon closer examination it can be seen that *Frankfort* is easily distinguishable from *Wallace* and the case at bar. The latter two cases deal with accidents occurring between vehicles at intersections involving preferred streets. The former case dealt with an accident involving a pedestrian us-

ing a crosswalk. The duties of the pedestrian at a crosswalk and the preferred driver at an intersection are quite different.

Indiana Code 9–4–1–87 sets out the standard of care to be used by a pedestrian using a crosswalk:

> "*Pedestrian's right–of–way at crosswalks.*—(a) When traffic control signals are not in place or not in operation, the driver of vehicle shall yield the right–of–way, slowing down or stopping if the need be, so to yield to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but *no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.*" (emphasis added)

■■■ Accordingly, a pedestrian stepping onto a street from a curb or place of safety has a duty to make sure he is not stepping into the path of an oncoming car which would be unable to stop. Since the pedestrian has this duty, for the purposes of contributory negligence, he is charged with "constructive knowledge" of any oncoming traffic which was in plain view and could have been seen if the pedestrian had checked the street before entering it. This statutory duty differs totally from the common law duty, enunciated in *Wallace*, of a driver entering an intersection on the preferred street. The preferred driver has the right to assume the non–preferred driver will obey the traffic laws and is not required to proceed overly cautiously into an intersection and to be cognizant of *everything* in plain view.

■■■ Modern day intersections are dangerous enough with left turn lanes, turn arrows, delayed signals, right turns on red, etc. The driver of the car entering the intersection on the preferred street is kept sufficiently busy by the action at the intersection. If we require this driver to additionally check the oncoming traffic on the non–preferred street we would probably cause more accidents than we would prevent. *Wallace v. Doan*, (1973) 155 Ind.App. 316, 292 N.E.2d 820 is the correct statement of the law concerning the issue involved in this case. The jury was improperly instructed.[6]

The appellants' third alleged instructional error involved the court's refusal to give Plaintiffs' Instruction No. 2 which read as follows:

> "At the time of the happening of the accident described in the complaint, there was in full force and effect a statute of the State of Indiana which provided, in pertinent part, as follows: 'Approaching or entering intersection.–(a) the driver of a vehicle approaching an intersection shall yield the right–of -way to a vehicle

---

**6.** In *Frankfort v. Owens*, (1976) Ind.App., 358 N.E.2d 184, 195, the court quotes this passage from *Devine v. Grace Construction and Supply Company*, (1962) 243 Ind. 98, 181 N.E.2d 862, 866:

> "Generally, 'it is negligence to fail to see or hear that which you could see or hear, by the exercise of ordinary and reasonable care, and for that reason the law attaches the same legal consequences for not seeing or hearing as it does if in fact you did see and hear.'" (citations omitted)

We agree with this statement of the law but hold the exercise of ordinary and reasonable care does not require a preferred driver to be constantly aware of the actions of non–preferred drivers in plain view.

Likewise we agree with the court in *Thornton v. Pender*, (1978) Ind., 377 N.E.2d 613, 617, that, "a driver has a duty to maintain a lookout while operating a vehicle." *Thornton* states this duty includes the duty to look at more than the traveled portion of the road and cites travelers along the side of the highway, children or bicycles along the road, and vehicles approaching the highway from another intersecting roadway as examples of this duty. The case cited in support of the latter example, *Samuel–Hawkins Music Co. v. Ashby*, (1965) 246 Ind. 309, 205 N.E.2d 679 involved a collision at an unmarked rural intersection which distinguishes it by its facts from the case at bar.

which has entered the intersection from a different highway.

(b) When two (2) vehicles enter an intersection from different highways at the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.' If you find from a preponderance of the evidence that defendant, Charles A. Hunter, violated the statute on the occasion in question and that the violation was without legal excuse or justification, such conduct would constitute negligence on the part of defendant, Charles A. Hunter."

■ This instruction sets out IC 9-4-1-81 but it has no application to through or preferred highways. *D. Graff & Sons v. Williams*, (1945) 115 Ind.App. 597, 61 N.E.2d 72. The instruction was properly refused.

The court also refused to give Plaintiffs' Instruction No. 3.

"At the time of the happening of the accident described in the complaint, there was in full force and effect a statute of the State of Indiana which provided, in pertinent part, as follows:

'(1) Vehicular traffic facing a steady red signal alone shall stop at clearly marked stop line, . . . or if none, then before entering the intersection and shall remain standing until an indication to proceed . . .'

If you find from a preponderance of the evidence that defendant, Charles A. Hunter, violated the statute on the occasion in question, and that such violation was without legal excuse or justification, such conduct would constitute prima facie evidence of negligence on the part of defendant, Charles A. Hunter."

Instead the court read Instruction No. 15.

"On September 15, 1975, there was in force a statute of the State of Indiana entitled 'Traffic Control Signal Legend', which provided in part:

'Whenever traffic is controlled by traffic control signals exhibiting the words "go", "caution", or "stop", or exhibiting different colored lights successively, the following colors only shall be used and said terms and lights shall indicate and apply to drivers of vehicles . . . as follows:

(a) Green alone or green accompanied by the word "Go":

(1) Vehicular traffic facing the signal, except when prohibited under other sections of this chapter, may proceed straight through or turn right or left, unless a sign at such place prohibits either such turn. But vehicular traffic shall yield right-of-way to other vehicles . . . at the intersection at the time such signal is exhibited.

(b) Yellow alone or yellow accompanied by the word "Caution" when shown with or following the green or "Go" signal:

(1) Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at the intersection, but if such stop cannot be made in safety, vehicle may be driven cautiously through the intersection.

(c) Red alone or red accompanied by the word "Stop":

(1) Vehicular traffic facing a steady red signal alone shall stop at clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection and shall remain standing until an indication to proceed is shown except as provided in subsection (c)(2).

(2) Where no sign is placed prohibiting such a turn, vehicular traffic facing a steady red signal, after coming to a complete stop, may cautiously enter the intersection to make a right turn. Such vehicular traffic shall yield the right of way . . . to other traffic using the intersection.'

If you find from a preponderance of the evidence that either John W. Anderson or Charles A. Hunter violated this statute on the occasion in question with-

out sufficient justification or excuse, such conduct would constitute evidence of negligence."

Although Plaintiffs' Instruction No. 3 is covered by paragraph (c)(1) of Instruction No. 15, the appellants argue this did not cure the failure to give No. 3 due to the confusing, partially inapplicable nature of No. 15. Although we agree with the appellants that No. 15 is confusing and overinclusive, it in itself would be insufficient grounds for reversal but we suggest it be clarified upon retrial.[7]

## II. TESTIMONY OF HERMAN ARNOLD

The next error alleged by the appellants concerns the trial court's refusal to sustain the appellants' objection to certain testimony given by Herman Arnold. The following passage is taken from Arnold's deposition which was read to the jury. The questions are being posed by counsel for the appellees on cross-examination.

"Q Prior to this accident . . . and based upon the number of times that you travel this intersection, have you had any experience with that light?

A The light hangs up . . . I've seen whole lines of traffic . . . off of Ley Avenue . . . run a red light and just keep going . .

because there's factories . . . when you cross that Highway 3, it's Progress Avenue . . . and there's factories down in there . . and I have seen the light hung up with the red light on . . . and . . . thirty or forty (30–40) cars off of Ley Avenue go through the light, through the red light . . . and then . . . . .

MR. DAVID A. KRUSE: Excuse me, I want to just interpose an objection . . . just for the record, that . . . testimony as to that light on other occasions has no relevance or materiality to this case. There's been no proper foundation laid for introducing evidence as to the remote time and . . . concerning the traffic light."

This objection was overruled by the court. In support of their argument that irrelevant prior defects are inadmissible the appellants cite *Diamond Block Coal Co. v. Edmonson*, (1896) 14 Ind.App. 594, 43 N.E. 242. In that case the plaintiff was injured while working at a coal mine when a cable and safety catches broke causing the cage in which he was riding to fall. The plaintiff alleged the cable and safety latches were defective. At trial the plaintiff introduced evidence that on one prior occasion a

---

7. Including only the material portions of the statute; IC 9–4–1–34, the instruction would be much more helpful to the jury as follows:

"On September 15, 1975, there was in force a statute of the State of Indiana entitled 'Traffic Control Signal Legend', which provided in part: 'Whenever traffic is controlled by traffic control signals . . . exhibiting different colored lights successively, the following colors only shall be used and said terms and lights shall indicate and apply to drivers of vehicles . . . as follows:
(a) Green . . . . :
(1) Vehicular traffic facing the signal, . . , may proceed straight through or turn right or left, . . . . [But vehicular traffic shall yield right–of–way to other vehicles . . . at the intersection at the time such signal is exhibited.]

(c) Red . . . . :

(1) Vehicular traffic facing a steady red signal . . . shall stop at clearly marked stop line, but, if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection and shall remain standing until an indication to proceed is shown . . . . .
If you find from a preponderance of the evidence that either John W. Anderson or Charles A. Hunter violated this statute on the occasion in question without sufficient justification or excuse, such conduct would constitute evidence of negligence."
The bracketed portion of paragraph (a)(1) refers to the situation where the vehicle is stopped at a red light. When the light turns green, the stopped vehicle should yield the right--of--way until the intersection is cleared. This does not relate to the case at bar and should also be deleted.

state mine inspector found the safety catches had been removed. In reversing the trial court, the Appellate Court held it was reversible error to admit the evidence since it was a dissimilar act of negligence and it was not pertinent to, nor did it shed any light upon the issues involved in the case since the complaint alleged defective safety catches, not the absence of them.

The facts involved in *Diamond* can be analogized to those in the case at bar. In the former case the complaint alleged the safety catches were used but they were defective. In the latter case, the parties' stipulation stated the automatic traffic signals at the intersection were operative and the complaint and the answer allege they were not obeyed. The irrelevant evidence in *Diamond* concerned an occasion where the safety catches were not used. In the case at bar the irrelevant evidence concerned an occasion when the traffic signals were not operative.

In response, the appellees make the bold statement that since Mr. Anderson testified he was very familiar with the intersection, "the past history, quirks, or prior occurrences at the intersection become extremely relevant" without providing us with any explanation as to why familiarity with the intersection makes its past history relevant to this case.

The appellees also cite two cases to support the trial court's decision to admit the prior malfunction testimony. In the first case, *Lake Erie & W.R.R. v. Howarth*, (1919) 73 Ind.App. 454, 124 N.E. 687, the court upheld the trial court's decision to admit evidence concerning the operation of the railroad warning bell before and after the accident involved. But in that case the complaint alleged the automatic bell was not working and there was evidence tending to show the bell was not working on the occasion in question. In the second case, *Chesapeake and Ohio R.R. v. Perry*, (1919) 71 Ind.App. 506, 125 N.E. 414, a similar admission of evidence was upheld since the evidence tended to show the defendant, by the exercise of ordinary care, might have had the electric gong repaired.

These two cases are clearly distinguishable on their facts and pleadings from the case before us. In our case all of the parties stipulated the automatic traffic signals were operative. Granted, this does not clearly state the signals were correctly operating, but that inference can be drawn from the stipulation when the facts and pleadings are viewed as a whole. In the pre-trial order, the appellees list their contentions which allege Mr. Anderson was guilty of contributory negligence, incurred the risk of the injuries he suffered and further allege Mr. Hunter was faced with a sudden emergency at the time of the accident. Nowhere do the appellees allege or contend the collision was caused by a malfunctioning traffic signal. Additionally, the appellees fail to list the proper operation of the signal as a question of fact to be determined by the jury in the pre-trial order.

Although he did not recall specifically checking the signals involved in this case, Captain Biddle, who investigated the accident, testified he routinely checked traffic signals in situations such as this and his accident report contained no record of the signals not operating correctly.

Each truck driver testified he had the green light and the traffic intersecting his lane was stopped awaiting the green. There was no competent evidence before the court that the traffic light was not functioning properly. True, Arnold testified both trucks approached the intersection as if they each had the green, but Arnold could only see the light facing Mr. Anderson. In their own brief the appellees state "the dispute was over which driver had the green light."

Since there was no evidence the traffic signals malfunctioned at the time of the accident, and since the operation of the signals was not at issue in the case, Arnold's testimony concerning prior malfunctions of the signals was immaterial and should not have been admitted.

"To be material, evidence sought by a question must tend to prove or disprove a fact which relates to an issue in the lawsuit. . . . Whereas materiality deals with the relationship between the issues of the case and the fact which the evidence tends to prove, relevancy deals with the requirement that the evidence must logically tend to prove a material fact." (citations omitted)

*Estate of Azimow v. Azimow*, (1967) 141 Ind.App. 529, 230 N.E.2d 450. Taking the above reasoning one step further, even if the operation of the traffic signal was in issue, the testimony offered by Arnold would still be irrelevant. Arnold testified the light "hangs up." Although it is not totally clear, it appears by "hangs up" Arnold means the light gets stuck and remains green for State Road 3 and remains red for Ley Avenue (Progress Road). The evidence in no way tends to logically prove the lights at the time of the accident were green for both drivers.

■ The admission of Arnold's testimony is left to the discretion of the trial court and should only be reversed on appeal where a clear abuse of discretion is shown. *Spears v. Aylor*, (1974) 162 Ind.App. 340, 319 N.E.2d 639.

"An abuse of discretion that would permit a reviewing court to overturn a trial court's determination is 'an erroneous conclusion and judgment, one clearly against the logic and effect of facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom.' *Dunbar v. Dunbar*, (1919) 145 Ind.App. 479, 483, 251 N.E.2d 468, 471."

*Godfrey v. State*, (1978) Ind.App., 380 N.E.2d 621, 623. The admission of this immaterial, irrelevant evidence was clearly against the logic and effect of the facts and circumstances before the court, it was an abuse of discretion.[8]

The appellants also objected to a volunteered statement made by Arnold during his cross-examination. While they have presented us with a persuasive argument in their briefs, they have failed to include the basis of their objection in the record. The Arnold deposition, which was filed with this court in lieu of a transcription of the reading of the deposition at trial, simply notes counsel for the appellants objected to the volunteered statement and the objection was overruled. It does not give the basis for the objection. "It is the duty of an appellant to present an adequate record to an appellate court." *Bullock v. State*, (1978) Ind.App., 382 N.E.2d 179, 185. The appellants have failed to fulfill their duty.

■ Lastly, the appellants claim the trial court erred in granting a directed verdict in favor of appellee Clyde Gillespie. While presenting their case, the appellants failed to produce any evidence of a master–servant relationship between Hunter and Gillespie. Although the appellants did put into evidence a picture of the truck Hunter was driving which bore the words "Clyde W. Gillespie" on its side, this alone was insufficient to survive a T.R. 50 motion. This very issue was decided in *State v. Halladay*, (1978) Ind.App., 374 N.E.2d 51, 53.

"The mere fact that Randolph's name was displayed on the side of the vehicle is wholly insufficient to support any reasonable inference that the driver, whoever it may have been, was an agent or employee of Randolph and that he was acting within the scope of his employment." (citations omitted)

■ The appellants failed to introduce any evidence as to the master–servant relationship because they incorrectly believed it to have been admitted by the appellees. In

---

8. Under normal circumstances, a reversal will not be granted due to an error in the admission of evidence unless the opposing party can show he was prejudiced by the admission of the evidence. *Brummett v. Pilotte*, (1979) Ind.

App., 390 N.E.2d 705. In this case though, since we have found instructional error sufficient to reverse, we will not address this additional issue.

the stipulation entered into by all of the parties, it was agreed "Charles A. Hunter was driving a Mack truck for Pre–Fab Transit Company, Inc., which truck was leased from Clyde Gillespie." This only admits ownership of the truck. It does not admit employment of the driver.

Also, the appellants argue the appellees failed to preserve this issue in the pre–trial order by failing to list it as a question of fact to be decided at trial. We disagree. The pre–trial order specifically lists as one of the defendants' contentions, "the negligence of Charles A. Hunter, if any, cannot be imputed to defendant, Clyde Gillespie." Although "imputed negligence" is most often used in a contributory negligence context, it has also been used synonymously with vicarious liability, master servant relationship and respondeat superior. See *Gibbs v. Miller*, (1972) 152 Ind.App. 326, 283 N.E.2d 592. The appellants were sufficiently put on notice that this issue had not been admitted nor stipulated. The trial court correctly granted Gillespie's motion for a directed verdict.

The judgment of the trial court is reversed and this cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

YOUNG, P. J., and MILLER, J., concur.