**Edith GORBY, Guardian of the Person and Estate of Dennis L. Gorby and Edith Gorby, Individually, Plaintiff-Appellee,**

v.

**SCHNEIDER TANK LINES, INC., Defendant-Appellant.**

No. 82–1579.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1984.

Decided Aug. 16, 1984.

Richard A. Mayer, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, Ind., for plaintiff-appellee.

Timothy F. Kelly, Beckman, Kelly & Smith, Robert F. Parker, Hammond, Ind., for defendant-appellant.

Before PELL and POSNER, Circuit Judges, and WEIGEL, Senior District Judge.[*]

PELL, Circuit Judge.

Dennis Gorby was severely injured when defendant-appellant's semi-tanker truck collided with his vehicle at an Indiana highway intersection in the late evening of October 5, 1977. Gorby's wife, acting individually and in her capacity as guardian of her husband's person and estate, brought this diversity action seeking compensation for her loss of consortium and for her husband's personal injuries. The case was tried to a jury, which found against appellant and awarded appellee a total of $1,820,000. Appellant now raises four issues on appeal, each of which it claims merits reversal of the judgment. First, appellant maintains the trial judge abused his discretion when he prevented appellant's expert witnesses from identifying one of the sources upon which they relied when they formulated their opinions. Second, appellant argues that the trial judge incorrectly instructed the jury with respect to the duty of a motorist to observe vehicles approaching from a non-preferred street. Third, appellant contends that the trial judge improperly prohibited a lay witness from giving opinion testimony. Fourth and finally, appellant claims the trial judge erred when he instructed the jury on a theory of negligence not specifically mentioned in the case's pretrial order. We consider in turn each issue raised. There is no claim on appeal that the damages are excessive.

## I. FACTS

At approximately 11:00 p.m. on October 5, 1977, David Welsch, an employee of defendant-appellant Schneider Tank Lines, Inc. (Schneider), drove a semi-tanker truck

---

[*] The Honorable Stanley A. Weigel, Senior District Judge of the Northern District of California, is sitting by designation.

owned by his employer in the eastbound direction on a segment of U.S. Highway 30 in Lake County, Indiana. Two smaller streets, Utah Street and Stardust Road, intersect Highway 30 perpendicularly on this segment. Utah Street lies approximately 723 feet to the west of Stardust Road. The eastbound portion of Highway 30 has two lanes, an outer lane and a passing lane, plus a right-hand turn lane for Stardust Road. The Schneider truck struck Dennis Gorby's pick-up truck at the intersection of Highway 30 and Stardust Road. Gorby had entered the intersection from Stardust Road and apparently intended to cross the median and drive westbound on Highway 30. There was evidence that at the time of the accident, the Schneider truck was travelling at approximately fifty miles per hour and was engaged in tenth gear. Although Welsch testified he applied his brakes, a state trooper stated at trial that he saw no skid marks on Highway 30 west of the point of impact.

Carl Highlan was travelling westbound on Highway 30 at the time of the accident. He testified that he heard the Schneider truck's horn blow when the truck was at or near the Utah Street intersection. He testified that he saw the Schneider truck then move from the outer lane to the passing lane. Highlan had a passenger in his car, Linda Harper, who also witnessed the accident. An investigator hired by Schneider took Harper's written statement shortly after the accident. In October 1980, Schneider revealed to appellee that it had taken Harper's statement. Appellee sought discovery of the statement, but Schneider refused production, claiming that the statement was prepared in anticipation of litigation and protected under Fed.R.Civ.P. 26(b)(3). In March 1981, District Judge McNagny issued a protective order permitting Schneider to resist production until appellee showed that it had substantial need for the statement and could not obtain equivalent material without undue hardship. Appellee never made such showings and accordingly did not obtain the statement prior to trial. Harper became unavailable approximately one year before the time of trial.

At trial, each party offered the testimony of accident reconstruction experts. On direct examination, appellee's expert, Dr. Moffatt, testified that a truck moving at fifty miles per hour could stop safely over a distance of 255 feet. Since the Utah Street intersection, the point at which Welsch blew the truck's horn, is 723 feet from the point of the accident, Dr. Moffatt stated, Welsch had the "opportunity and means to prevent this accident." On cross-examination, Dr. Moffatt stated that Welsch's decision to change lanes rather than stop was imprudent. Earlier, counsel for appellant had asked Dr. Moffatt whether he had reached his opinions prior to reading Linda Harper's statement. Dr. Moffatt had responded that he had not read the Harper statement.

Appellant's expert, Dr. David Gillespie, testified that Welsch could not have avoided the accident by stopping and that Welsch took all prudent steps to avoid the accident. Dr. Gillespie also stated that he could not understand Gorby's decision to enter the intersection when the Schneider truck was a short distance away. Appellant also offered the testimony of Dr. Romwualdi, an expert who said he agreed with Dr. Gillespie that Welsch did all that was prudent to avoid the accident.

Appellant had planned to ask its experts at trial, Drs. Gillespie and Romwualdi, whether they had read Linda Harper's statement prior to forming their opinions and whether the statement's contents supported their conclusions. Appellant's experts had in fact reviewed the Harper statement in the course of forming their opinions, and appellant hoped that the jury, upon learning that Drs. Gillespie and Romwualdi had used "more and better information" than had Dr. Moffatt, would accord the testimony of the former two witnesses more weight than they would the testimony of appellee's expert. At sidebar, however, the trial judge, Judge Sharp, learned that counsel for appellant had allowed Drs. Gillespie and Romwualdi to examine the Har-

**1018**

per statement only after appellee's counsel had finished taking the depositions of those two experts. Judge Sharp was plainly troubled by this tactic and considered it "fundamentally unfair." Counsel for appellant stated that Drs. Gillespie and Romwualdi knew the contents of the statement before they were deposed, and counsel added that it was only the presentation of the Harper document to the experts that was postponed until after the taking of depositions. Judge Sharp responded, "Well, the fact remains that you're now trying to use that statement, that specific statement, and not its substance to bolster up [the] opinion [of appellant's experts]." Judge Sharp continued, "I'm going to rule that the expert cannot refer to [the Harper statement], and it cannot be used to bolster up his opinion, and it cannot be questioned about." Counsel for appellant thereafter admonished Drs. Gillespie and Romwualdi not to refer to the statement in the course of giving their testimony. Counsel stated, "Dr. Gillespie, the Court has asked me to admonish you that in rendering your opinion or, in fact, in any of your testimony here today you are not to refer to the statement of Linda Harper .... And you are not to include any of the information in that statement in your opinion." Judge Sharp added directly thereafter:

> [You are not to include any information] [t]hat's exclusively in that statement. Most of the statement is covered, but there may be two or three little items that are unique to that statement. It's pretty narrow, really. It's basically—you're basically inhibited from mentioning the Linda Harper statement or stating explicitly that you are relying on it. It's really to keep the name of the Linda Harper statement out. That's all we're concerned about on that.

The jury returned two separate verdicts, one in favor of Dennis Gorby's wife in the amount of $320,000 and one in favor of Dennis Gorby in the amount of $1,500,000. Appellant filed a timely appeal.

## II. DISCUSSION

### A. Appellant's Experts and the Statement of Linda Harper.

Decisions in the course of trial to admit or exclude evidence are "peculiarly within the competence of the district court and will not be reversed on appeal unless they constitute a clear abuse of discretion." *Ellis v. City of Chicago*, 667 F.2d 606, 611 (7th Cir.1981); *United States v. Micklus*, 581 F.2d 612, 617 (7th Cir.1978). In 1970, the Federal Rules of Civil Procedure were amended to permit considerable discovery of information obtained by experts. *See* Fed.R.Civ.P. 26(b)(4). Under certain circumstances, a party may even depose an opposing party's expert who is expected to testify at trial. *See* Fed.R.Civ.P. 26(b)(4)(A)(ii). The notes of the Advisory Committee on Rules explain the 1970 amendment:

> [A] prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. Effective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand. A California study of discovery and pretrial in condemnation cases notes that the only substitute for discovery of experts' valuation materials is "lengthy—and often fruitless—cross-examination during trial," and recommends pretrial exchange of such material. Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, then the narrowing of issues and elimination of surprise which discovery normally produces are frustrated.

[Citations omitted.] Appellant's practice of not providing its experts with the Harper statement until after appellee had taken their depositions frustrated the very purpose of permitting pretrial discovery of an adverse party's expert witnesses. Had ap-

pellant not engaged in this practice, appellee could have learned at the deposition that the Schneider experts had relied on the Harper statement. Since Harper had become unavailable, appellee could then have met the need and undue hardship standard of Judge McNagny's protective order. As a result of appellant's practice, appellee did not receive the Harper statement until the third day of trial, at a sidebar interrupting the cross-examination of Dr. Moffatt. Dr. Moffatt had already testified on direct examination that he had reached his expert opinion without referring to the statement. Appellant's practice resulted in surprise at trial and impaired appellee's ability to present effective rebuttal, two of the evils Rule 26(b)(4) sought to eliminate. Appellant must argue that Judge Sharp's prohibiting appellant's experts from referring to Linda Harper's statement had a significant detrimental effect on appellant's case. Otherwise, Judge Sharp's ruling would not be subject to appellate reversal. *See* Fed. R.Civ.P. 61. If we assume that appellant would have gained a substantial advantage by allowing its experts to tell the jury they had relied upon the Harper statement, it follows that appellant's withholding of the Harper statement until after the experts had been deposed resulted in a substantial frustration of the purposes underlying Rule 26(b)(4). Rule 26 was amended to give litigants a method of eliminating from trial the type of substantial advantage appellant sought. Judge Sharp was correct to prevent a significant frustration of Rule 26(b)(4), and he acted within his discretion if the means he used were appropriate.

■ We believe the method Judge Sharp used was well suited to avoid significant frustration of Rule 26(b)(4). Judge Sharp's ruling was narrow. He principally prohibited appellant's experts from stating they had taken into account a statement which Dr. Moffatt had not seen. The ruling thereby eliminated the advantage appellant secured by surprise and placed the experts back on reasonably equal footing. The ruling also prevented appellant's experts from relying upon two or three facts known uniquely through the Harper statement.

Judge Sharp thereby ensured that Dr. Moffatt's testimony would serve as suitable rebuttal to the testimony of appellant's experts. The ruling addressed the precise problems created by appellant's withholding of information from its experts and served effectively to remedy the unfairness created by appellant's engaging in that practice. We accordingly find that Judge Sharp acted well within his discretion when he prohibited appellant's experts from referring to the Harper statement.

**B. The Jury Instruction Concerning Duty of Care**

Appellant assigns error to the district court's reading Court's Instruction No. 36, which stated:

> You are instructed that the driver of a motor vehicle on a preferential street or highway has a duty to maintain a proper lookout, and that duty consists of exercising reasonable care in observing the street ahead, intersections in the street ahead, and other vehicles approaching and crossing from intersecting roads.

Appellant maintains that Instruction No. 36 contradicts Indiana law concerning duty of care as articulated recently by the Indiana Court of Appeals in *Anderson v. Pre-Fab Transit Co.,* Ind.App., 409 N.E.2d 1157 (1980). In *Pre-Fab Transit,* appellant Anderson observed a truck travelling perpendicularly to the one on which Anderson travelled. Anderson, who was travelling at about twenty miles per hour, observed the truck when he was approximately 275 feet from the intersection of the two roads. The court assumed for purposes of the case that when Anderson was approximately 150 feet from the intersection, the traffic light regulating his lane changed from red to green. As Anderson travelled toward and into the intersection he did not recheck the progress of the appellee's truck because he assumed the truck would obey traffic signals. The court held that Anderson was not contributorily negligent for failing to recheck cross-traffic. The court stated:

Therefore, if Anderson was 'lawfully using a public highway,' if he [was on a preferential highway], then he had no duty to look north and south [on the nonpreferential highway] to see if any of the approaching traffic was going to violate the law.

. . . .

. . . Since the plaintiff was not required to look left and right when approaching the intersection while on the preferential street, this precautionary measure must not be mandated under the court's definition of due care.

. . . .

Modern day intersections are dangerous enough with left turn lanes, turn arrows, delayed signals, right turns on red, etc. . . . If we require this driver to additionally check the oncoming traffic on the nonpreferential street we would probably cause more accidents than we would prevent.

*Id.* 409 N.E.2d at 1163–64.

■ Appellant maintains that Instruction No. 36 "clearly requires a motorist on a preferential street to look down intersecting roadways," a requirement inconsistent with *Pre-Fab Transit.* In our opinion, however, it takes an illogical stretch of the imagination to read into Instruction No. 36 a requirement that a motorist look down intersecting streets. Instruction No. 36 merely requires a motorist to exercise reasonable care to observe "the street *ahead,*" "the intersections in the street *ahead,*" and "other vehicles approaching *and* crossing from intersecting roads." [Emphasis added.] Instruction No. 36 comports with common sense, and nothing in it requires a motorist to look down intersecting streets.

We also note that even if a juror were inclined to give Instruction No. 36 the same tortured reading that appellant gives the instruction, the juror would be dissuaded from so doing by Instruction No. 34, which states:

In general, drivers have a duty to maintain a lookout while operating a motor vehicle. . . . However, a driver on a preferred roadway has the right to assume that drivers on non-preferred roadways will obey the traffic laws. A person lawfully operating a motor vehicle on a preferred street or highway is not required to look to the left or the right before entering and traversing any non-preferred street intersecting the preferred highway.

Accordingly, the district court correctly instructed the jury that appellant's driver, Welsch, had a duty to observe the traffic in front of him, and the court made plain that Welsch was under no duty to look down the streets running perpendicular to the one on which he travelled.

In its reply brief, appellant takes a more extreme position, maintaining that Instruction No. 36 violates *Pre-Fab Transit* because the instruction requires a motorist to observe "other vehicles approaching . . . from intersecting roads." The *Pre-Fab Transit* court, however, merely held that tort law should not impose extensive duties on motorists which would end up increasing the hazards at intersections. The court never absolved motorists of duties that comport with ordinary caution. Thus, although a driver is not required to turn his head to the right and left, he is required to observe approaching traffic in a reasonable field before him. Instructions Nos. 36 and 34 only required that Welsch observe approaching traffic in such a field, a requirement consistent with common sense and with the rule of *Pre-Fab Transit.*

C. Exclusion of Lay Opinion Testimony

At trial, appellee offered the testimony of Carl Highlan, an eyewitness to the accident. On cross-examination, counsel for appellant tried to lay a foundation for Highlan's opinion testimony. Counsel elicited from Highlan the facts that Highlan was a licensed driver for twenty-nine years, that he drove approximately 19,000 miles per year, and that visibility was good on the night of the accident. Counsel then asked Highlan: "Do you have an opinion as to whether or not the driver of the semi truck [Welsch] did everything he could to avoid this accident?" Appellee's counsel

objected, and Judge Sharp then permitted the following offer of proof:

Q. Carl, based on what you saw that night, and on your driving experience, do you have an opinion as to whether or not the driver of the semi would have avoided this accident?

. . . .

A. Yes, I have an opinion . . . . First of all, keeping in mind I've never been a truck driver, but I have many years of experience driving, I feel that—and this is a sequence of events that happened—that the route he selected, there was insufficient time for him to avoid it.

Q. Now, do you also have an opinion as to whether or not Dennis Gorby could have avoided this accident; he being the driver of the Ford pickup truck?

A. With the route that the semi truck driver took, if Mr. Gorby would have stopped in the driving lane, I feel, in my mind, it could have been avoided.

Counsel for appellant argued that Highlan's answers were admissible as lay opinion testimony, but Judge Sharp disagreed and ruled that Highlan could not give the proposed testimony. Appellant now assigns error to this ruling.

■ Rule 701 of the Federal Rules of Evidence governs the admissibility of lay opinion testimony. The Rule assumes that a lay witness will "give his testimony by stating his observations in as raw a form as practicable," but the Rule, consistent with the modern trend, permits the witness "to resort to inferences and opinions" when, in addition to being helpful to the jury, the opinions are based upon first-hand knowledge or observations. 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 701[01] (1982); *see* Fed.R.Evid. 701, Notes of Advisory Committee on Rules. The decision whether lay testimony meets the criteria of Rule 701 is one committed to the discretion of the trial court, *United States v. Baskes*, 649 F.2d 471, 478–79 (7th Cir. 1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1706, 68 L.Ed.2d 201 (1981); *Randolph v.*

*Collectramatic, Inc.*, 590 F.2d 844, 847 (10th Cir.1979), and our review is limited to the identification of an abuse of discretion.

■ Highlan was prepared to state two opinions. In our view, Judge Sharp properly excluded the two opinions because neither was based upon first-hand knowledge or observation. First, Highlan was prepared to state that Welsch did "everything he could to avoid [the] accident." Highlan, however, was not present in the truck's cab with Welsch. Highlan could only observe the semi-tanker truck from a car in the opposite lane of traffic and thus could not know the exact measures Welsch took to avoid the accident. More significantly, Highlan could not know when Welsch perceived Gorby's truck. Furthermore, even if Highlan had been present in the cab with Welsch, we would still find that the opinion was not based upon first-hand knowledge or observation. Appellant never established that Highlan was familiar with the Schneider semi-tanker truck. In particular, appellant never established that Highlan was familiar with the safety equipment semi-tanker trucks carry, the distances over which trucks may safely stop, the load the Schneider truck carried, or the brake and steering equipment of such trucks. The mere fact that Highlan was a motorist with twenty-nine years of experience did not give him the personal knowledge necessary to formulate an admissible lay opinion, and Judge Sharp properly exercised his discretion to exclude Highlan's first opinion.

Highlan was also prepared to state that Gorby could have avoided the accident. The exclusion of this opinion presents a closer question than does the exclusion of the first opinion because a pick-up truck more closely resembles an ordinary car than it does a semi-tanker truck. Our review, however, is limited to identifying an abuse of discretion, and we conclude there was no abuse. There is nothing in the record to indicate that Highlan was familiar with the type of pick-up truck Gorby drove, its safety features, its acceleration and stopping times, or the load it was carrying on the night of the accident. The

record fails to disclose that Highlan ever set foot in a pick-up truck, and the district court could well find that Highlan's testimony was based upon speculation rather than upon first-hand knowledge.

## D. The Pretrial Order

Appellant contends that Judge Sharp committed reversible error when he read to the jury two instructions, labelled Court's Instructions Nos. 42 and 44. Instruction No. 42 recited Federal Motor Carrier Rules and Regulations §§ 395.3, 395.2, 392.3. These regulations, in pertinent part, prohibit designated motorists from driving more than ten hours in a single day or from driving after having been "on duty" for more than fifteen hours in one day. Instruction No. 44 stated that violation of a safety statute establishes a rebuttable presumption of negligence. Appellant argues that Judge Sharp should not have given the instructions because the pretrial order did not mention violation of the motor carrier regulations as a possible theory of negligence and because there was insufficient evidence adduced at trial to warrant instructing the jury on violation of the regulations.

■ Under Fed.R.Civ.P. 16(e), a pretrial order, which serves to narrow the scope of trial and prevent surprise, controls "the subsequent course of the action," unless there is a modification. It is firmly established that the pretrial order will be considered modified if an issue not mentioned in the order is tried by the express or implied consent of the parties. *See* Fed.R. Civ.P. 15(b); C. Wright & A. Miller, Federal Practice and Procedure § 1491, at 455–56 (1971).

■ Although negligence predicated on violation of the motor carrier regulations was not a theory mentioned in the pretrial order, we believe there was an implied consent to trial of the issue. First, it was appellant that first introduced evidence bearing on a violation of the motor carrier regulations; counsel asked Welsch on direct examination how long he had driven and how long he had slept on the day of the

accident. Second, appellant never objected to or attempted to limit the evidence introduced by appellee concerning the number of hours Welsch had driven on the date of the accident. At one point during cross-examination, appellee's counsel said to Welsch: "May I suggest, Mr. Welsch, that you don't know these [travelling] times, because you know that you were illegally driving that truck, because you had been driving too much." Appellant's counsel objected to the question, but not on the ground that the issue was outside the scope of the pretrial order. A lengthy sidebar followed, during which counsel for appellee explicitly stated he was trying to prove a violation of the Federal Motor Carrier Safety Regulations. Counsel for appellant never raised an objection based upon Fed.R.Civ.P. 16. After the judge overruled appellant's objection, appellee's counsel continued to question Welsch and specifically inquired whether Welsch had been on duty continuously for fifteen hours prior to the accident. Appellant's counsel raised no objection to the line of inquiry. Third and finally, on redirect examination appellant's counsel asked Welsch whether he was travelling in violation of the law on the night of the accident. The context makes clear that appellant's counsel was inquiring about violation of the motor carrier regulations. In light of the explicit reference during the sidebar to violation of the federal motor carrier regulations, counsel for appellant's subsequent failure to object to testimony germane to such violation, and counsel for appellant's inquiry into possible violation of the regulations on direct and redirect examination, we believe there was implied consent to litigation within the meaning of Fed.R.Civ.P. 15(b).

■ Appellant last argues that Judge Sharp erred when he instructed the jury on violation of the motor carriers regulations because there was insufficient evidence adduced at trial to support finding a violation. After carefully reviewing the record, we conclude there is no merit to appellant's argument. Welsch testified he departed from Homerville, Ohio, on the morning of

October 5 and that his truck was in his care and custody for all but three or four hours' sleeping time. Welsch's direct testimony revealed he drove for at least eight and one-half hours on October 5. There were many hours between the morning and 11:00 p.m., the time of the accident, for which there was no explicit accounting and about which Welsch was evasive upon examination at trial. The jury could reasonably infer that Welsch had spent more than one and one-half hours of the unaccounted time at the "controls of [his] motor vehicle in operation." Federal Motor Carriers Safety Regulations and Rules § 395.2(b). Similarly, there was evidence from which the jury could infer that Welsch had been on duty continuously for at least fifteen hours prior to the accident. Accordingly, Judge Sharp correctly submitted instructions to the jury concerning Welsch's possible violation of the motor carriers regulations.

## CONCLUSION

Having considered the four assignments of error made by appellant, we are convinced the judgment of the trial court should not be disturbed. The trial judge did not abuse his discretion when he prohibited appellant's experts from identifying one of the sources upon which they relied when they formulated their opinions. He also correctly instructed the jury concerning the duty of care of appellant's driver. In addition, the judge properly prohibited a lay witness from giving opinion testimony not based upon first-hand knowledge. Finally, the judge properly instructed the jury concerning a theory of negligence not raised in the pretrial order because it was tried by implied consent. Accordingly, the judgment of the district court is

AFFIRMED.