**LOUIS VUITTON S.A. and Gucci Shops, Inc., Plaintiffs,**

v.

**K–ECONO MERCHANDISE, Pungyang Lee, and In Ka Lee, Defendants.**

No. 85 C 5691.

United States District Court, N.D. Illinois, E.D.

Aug. 19, 1988.

John F. Flannery, Robert P. Devlin, Barbara J. Blau, Fitch, Even, Tabin & Flannery, Chicago, Ill., for plaintiffs.

Fred B. Raskin, Raskin, Gerstein & Apostal, Chicago, Ill., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BRIAN BARNETT DUFF, District Judge.

This unfortunate case involves claims for patent infringement, false designation of origin and unfair competition pursuant to 15 U.S.C. §§ 1114 and 1125. Plaintiffs Louis Vuitton, S.A. ("Vuitton") and Gucci Shops, Inc. ("Gucci"), two world-wide makers of luxury merchandise, have sued defendant K–Econo Merchandise ("K–Econo"), a small retail shop selling handbags and related goods, and its two owners, defendants Pun Yang Lee ("Pun Yang") and In Ka Lee ("In Ka"), for their sale of merchandise bearing facsimiles of plaintiffs' registered trademarks. At a bench trial, after plaintiffs asserted that the state of mind required under the patent laws is "intentional," the court ruled for defendants. Plaintiffs appealed.

The Seventh Circuit neither affirmed nor reversed. Instead, it vacated this court's ruling and remanded the case for explicit findings of fact and conclusions of law as required in non-jury trials pursuant to Fed. R.Civ.P. 52(a), 813 F.2d 133 (1987). This court now abides that ruling.

## FINDINGS OF FACT

On May 29, 1985, Melvin Weisberg and Linda Morrison, two trademark investigators, appeared at K–Econo and purchased two items, one bearing an alleged counterfeit Gucci trademark and the other bearing an alleged counterfeit Vuitton trademark. About a month later, plaintiffs used those purchases to obtain a federal court order authorizing them to enter K–Econo and seize all remaining similar items. Six items were discovered and impounded—three counterfeit Gucci items and three counterfeit Vuitton items.

On the basis of the May purchases, the June seizures and the investigators' testimony that, during their investigation, they had seen 75 additional similar items, plaintiffs sought damages and injunctive relief against defendants. On December 23, this court issued a permanent injunction against defendants prohibiting them from selling counterfeit Gucci or Vuitton merchandise in the future.[1]

During the course of discovery on the case for damages, plaintiffs deposed defendant In Ka. Because neither In Ka nor her husband speaks English, an interpreter was necessary; plaintiffs provided their own. The transcript of the deposition suggests that, prior to the investigator's visit, customers had informed In Ka that some of her merchandise was counterfeit.

After In Ka received a copy of the transcript and had it re-interpreted, however, she told her attorney that it contained mistakes. She said that she had not testified —at least had not meant to testify—that she knew the bags were counterfeit when she sold them; indeed, she had not learned of their counterfeit nature until the June raid on her store. Accordingly, she refused to sign the deposition.

Unfortunately for In Ka, her attorney at the time, Fred B. Raskin, apparently did not listen to her or did not believe her. Thus, when the time came to prepare a pretrial order, he agreed to plaintiffs' proposed stipulation of fact that "[w]ith at least constructive notice of plaintiffs' federal registration rights, defendants have knowingly and willfully offered for sale, sold and distributed various types of luggage, handbags and accessories upon which are imprinted imitations and copies of plaintiffs' registered trademarks." He also agreed to a Statement of Contested Issues of Fact and Law stating only that "[t]he parties dispute the amount of income generated by defendants as a result of the sales of counterfeit Vuitton and Gucci merchandise." Then, after defendants refused to settle for the full amount plaintiffs sought, Mr. Raskin abandoned the case.

Enter attorney Jeffrey Firestone. With precious little time left before trial, Mr. Firestone prepared a defense that involved: conceding the counterfeit nature of the two items purchased in May and the six items seized in June; contesting the existence of any other counterfeit items at K–Econo; and denying that defendants knew they were selling and offering for sale counterfeit items until the day of the seizure.

At trial, plaintiffs' attorney, Joseph Iarocci, waived opening argument, and Mr. Firestone opened as follows:

> Your Honor, basically, this is a case where some Gucci bags and some Vuitton bags were seen and also purchased in the defendant's [sic] store.
>
> It is our contention that the sale of these bags were [sic] not willfully done with any malicious intent or a willful violation of the copyright laws, and while they had constructive notice of the laws, they never had any actual notice that they were Gucci bags and as a consequence, there may be some damages due and owing to Gucci, but there should not be treble damages.

Mr. Iarocci did not object to this argument, but he did proceed to read into the record the pretrial order's stipulated facts, including the stipulation stating that "defendants have knowingly and willfully offered for sale, sold and distributed various types of luggage, handbags and accessories upon

---

1. The docket sheet in this case reflects that the court's grant of the permanent injunction was not entered on a written order. Accordingly, the order in this case will include the permanent injunction order nunc pro tunc to December 23, 1985.

which are imprinted imitations and copies of plaintiffs' registered trademarks." When he finished reading the stipulations, he added:

> Accordingly, the only issue in this case is the amount of damages and attorney's fees since liability has been admitted, and to that end a preliminary injunction was entered by this court—a permanent injunction, excuse me—on December 23, 1985.[2]

During plaintiffs' presentation of their case, it became clear that they could not establish the existence at K–Econo of counterfeit items other than the eight stipulated ones. Mr. Weisberg, the sole witness as to the seventy-five allegedly counterfeit items, lacked credibility and actually came close to committing perjury. He began his testimony with explicit descriptions of the items he had seen at K–Econo, but on cross-examination he admitted that he had conducted so many investigations he could not remember where the store was, when he had been there, what size it was, where the counter was, where the bags were, or anything else about it. Thus, plaintiffs utterly failed to prove the sale or offer for sale of more than eight items.

Something else of significance occurred during plaintiffs' case: Notwithstanding the stipulation of fact regarding defendants' knowing and willful conduct, plaintiffs presented evidence challenging Mr. Firestone's contention on opening argument that defendants' did not know the merchandise was counterfeit when they offered it for sale. Specifically, Mr. Iarocci placed into evidence the transcript of In Ka's deposition,[3] and read to the court the portion of the transcript addressing In Ka's knowledge regarding the counterfeit nature of the eight concededly counterfeit items. Shortly after this reading, plaintiffs rested.

Defendants' case included only the testimony of In Ka and Pung Yang. The rea-

son for this should by now be no surprise: Mr. Raskin had failed to list any witnesses or exhibits in the pretrial order. Because of this omission, this court ruled that defendants could not present evidence other than their own testimony.

This testimony was enough. In difficult questioning through an interpreter, defendants persuaded this court that they had not learned that the counterfeit items were counterfeit until the June raid. In particular, In Ka demonstrated a commitment to telling the truth under oath, and satisfied this court that her purported admission of earlier knowledge during her deposition resulted from problems in communication through the plaintiffs' interpreter. Thus, by the time defendants rested, this court had determined that plaintiffs had not intentionally sold or offered for sale items which they knew to be counterfeit.

Mr. Iarocci began his closing argument as follows:

> Your Honor, the only issue in this case is the damage issue. It's been stipulated that the defendants intentionally sold counterfeit items bearing the Louis Vuitton and Gucci registered trademarks. Indeed, however, the testimony makes this clear.

> Mr. Weinberg testified that the defendants told him that the bags were copies and further, in her deposition, Mrs. Lee stated that she knew the bags were copies before the date on which the investigators made their purchases.

Mr. Iarocci then proceeded to argue for damages based on the eight counterfeit items and the seventy-five items purportedly seen by Mr. Weinberg. Mr. Firestone, in turn, reiterated his theory that plaintiffs had proven the existence of only eight counterfeit items, and that with respect to these eight, defendants did not know they were counterfeit until the June raid. He argued that, because of this lack of knowl-

---

**2.** It is perhaps worth noting at this juncture that defendants' original attorney in this case, Mr. Raskin, did not appear in court with his clients on the date the permanent injunction issued.

**3.** Mr. Firestone objected to the offer of the deposition, on the grounds In Ka had not signed it, but the court allowed its admission because, like so much else in this case, Mr. Raskin had consented to it in the pretrial order.

edge, defendant should not be held liable for damages or attorney's fees.

The court, satisfied that defendants had not known the counterfeit nature of any of the goods they had sold, questioned the attorneys about the state of mind required for assessing monetary damages in trademark cases. Mr. Firestone said that a wanton or willful standard was appropriate. Mr. Iarocci responded: "It's intentional, your honor, under the Trademark Counterfeiting Act." Accordingly, the court ruled for defendants on the issue of damages— the only issue before the court.[4] That ruling was not sufficiently clear. The court will now elaborate on it.

## CONCLUSIONS OF LAW

The Trademark Counterfeiting Act of 1984, 98 Stat. 2182, amending 15 U.S.C. § 1117, governs the damages issues here. The amended version of § 1117 provides:

(a) *Profits; damages and costs; attorney fees*

When a violation. of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, (3) the costs of the action ... in assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damage, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penal-

ty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

(b) *Treble damages for use of counterfeit mark*

In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation ... that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in § 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services....

The statute thus makes clear that a defendant's knowledge of the counterfeit nature of items he offers for sale plays a critical role in the determination of appropriate monetary relief. If the defendant had such knowledge, then subsection (b) requires treble damages and attorneys fees absent extenuating circumstances. By contrast, if the defendant did not know he was selling counterfeit goods, subsection (a) leaves the imposition of treble damages to the court's broad discretion, and permits the court to deny monetary relief altogether where principles of equity so require:

A successful plaintiff in a trademark infringement case is not always entitled to a monetary award in addition to injunctive relief, since any award for damages is subject to the principles of equity which give the court discretion based upon a wide range of considerations.

*Otids Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 746 (7th Cir.1985) (*quoting Ramada Inns, Inc. v. Apple*, 482 F.Supp. 753, 757–58 (D.S.C.1980); *Radio Shack Corp. v. Radio Shack*, 180 F.2d 200, 207 (7th Cir.1950); *see also Nalpac, Ltd. v. Corning Glass Works*, 784 F.2d 752 (6th

---

4. Defendants never contested liability since liability under the trademark laws, 15 U.S.C. § 1114(1), does not require that the defendant knew of the counterfeit nature of his merchandise. *Henri's Food Products Co., Inc. v. Kraft,*

*Inc.*, 717 F.2d 352, 359 (7th Cir.1983) (*citing Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 613 (7th Cir.1965)). Furthermore, the court's issuance of the December 23, 1985 permanent injunction resolved this issue.

Cir.1986) (granting injunctive relief but denying monetary relief under principles of equity where defendant had not intentionally infringed and had immediately agreed to terminate conduct upon discovery of wrongdoing) (citing *Armco Steel Corp. v. International Armament Corp.,* 249 F.Supp. 954, 959 (D.D.C.1966) (infringement intent is not relevant to trademark liability but is relevant to damages)).

■ This court found that plaintiffs failed to establish that defendants knew their merchandise was counterfeit. Defendants argued at trial, however, that such a showing was unnecessary because defendants had stipulated to such knowledge in the final pretrial order. The court rejects that position.

For one, the court doubts that the stipulation actually concedes intentional sale of items *known* to be counterfeit. The stipulation says that "defendants have knowingly and willfully offered for sale, sold and distributed various types of luggage, handbags and accessories upon which are imprinted imitations and copies of plaintiffs' registered trademarks." By contrast, § 1117(b) speaks of infringements "that consist[ ] of intentionally using a mark or designation, *knowing* such mark or designation is a counterfeit mark...." (Emphasis added). Thus, whereas the statute makes clear that defendants must have intentionally sold items knowing them to be counterfeit to fall within § 1117(b), the stipulation establishes only that defendants intentionally offered counterfeit items for sale; it does not necessarily state that defendants knew they were counterfeit at the time.

■ Moreover, even had the stipulation in the pretrial order clearly conceded defendants' knowledge, the court would still find against plaintiffs on this issue. "Under Fed.R.Civ.P. 16(e), a pretrial order, which serves to narrow the scope of trial and prevent surprise, controls 'the subsequent course of the action,' *unless there is a modification. Gorby v. Schneider Tank Lines, Inc.,* 741 F.2d 1015, 1033 (7th Cir. 1984) (emphasis added). Modifications may be effected by the court "to prevent manifest injustice," Rule 16(e), or "by the express or implied consent of the parties." *Gorby v. Schneider Tank Lines, Inc.,* 741 F.2d at 1022. *See generally* 6 C. Wright and A. Miller, Federal Practice & Procedure: Civil § 1526 (1971). "[Where] the issue was litigated at trial ... the pretrial order may be deemed to have been amended by the consent of the parties." *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 515 n. 9 (9th Cir.1985).

The reason for this rule is clear. Stipulations of fact help narrow the issues and thereby reduce the time and expense of trial. Once entered, they permit the parties to object on relevancy grounds to evidence either supporting or contradicting them; they require the fact-finder to accept them as true.

■ If the parties do present evidence on these issues at trial, however, the stipulations lose their cost-saving benefits. Even more importantly, they permit the fact-finder to assess the accuracy of the stipulations. Whereas the parties are entitled to tell the fact-finder that he must accept stipulations on which no evidence is presented, they cannot instruct him to ignore admitted evidence which affects his confidence in the stipulations.

Mr. Iarocci did not object when Mr. Firestone contested defendants' knowledge in opening argument; the plaintiff presented evidence seeking to establish defendants' knowledge of the counterfeit nature of the items; he did not object when defendants testified regarding their knowledge; he had the opportunity to, and did, cross-examine defendants on the issue; and he addressed the issue in closing argument. Accordingly, whatever the meaning of the stipulation, plaintiffs consented to have this court resolve the issue at trial; to prevent manifest injustice this court has resolved it and, as it turns out, against them.

■ Having determined that defendants did not "intentionally us[e] a mark or designation, knowing such mark or designation [was] a counterfeit mark," § 1117(b), this court has concluded that, for reasons of equity, it should deny plaintiffs monetary relief under § 1117(a). Defendants, who speak little English, did not realize they

were violating plaintiffs' rights until they were so informed in June, 1985; once they knew, they immediately agreed to terminate their misconduct. Furthermore, out of the hundreds of items at K–Econo, only eight were shown to be counterfeits of Gucci and Vuitton.

In short, nothing in this case suggests that defendants were actively engaged in palming off counterfeit products as a substantial part of their business. There simply was no need for this case to have gone to trial on the issue of monetary relief. The permanent injunction sufficed to apprise defendants of their wrongdoing and ensure that they would not violate plaintiffs' rights in the future. The trademark laws entitled plaintiffs to protect their merchandise, as they did and should, but this court need not, and will not, allow plaintiffs to use the laws as a sword, and their millions as a mace, to crush two small, unsophisticated and unwary immigrant merchants.

## CONCLUSION

Judgment on the issue of damages is entered for defendants and against plaintiffs. The permanent injunction issued against defendants at the December 23, 1985 hearing, prohibiting defendants from selling counterfeit Gucci or Vuitton merchandise in the future, is entered nunc pro tunc to December 23, 1985.