**Glenna M. Smith, Plaintiff-Appellee, v. Dorothy Moran, Defendant-Appellant.**

**Gen. No. 11,786.**

Second District, First Division.

October 23, 1963.

Stanley A. Durka, of Waukegan, for appellant.

Lidschin & Pucin, of Waukegan (Ellis E. Fuqua, of counsel), for appellee.

SMITH, J:

Defendant appeals from a judgment entered against her on a jury verdict of $15,000. Count I of the complaint charged that the defendant "with force and arms, assaulted the plaintiff and shot off a certain gun . . . at and against the plaintiff," etc. Count II charged that the defendant "recklessly, willfully, wantonly and maliciously discharged a certain gun . . . with a deliberate intent to inflict injury, or with an intentional disregard for the safety of the plaintiff aforesaid, and with an entire absence of care for the safety of the plaintiff, such as would show a conscious indifference to consequences," etc. The jury answered in the affirmative the following interrogatory: "Was the defendant, Dorothy Moran, at the time and place in question guilty of willful, wanton and malicious conduct and was malice the gist of the action?" Issues were made up by appropriate answer. Post-trial motion containing fifty-eight assignments of error was denied by the trial court and an appeal was taken to the Supreme Court on the theory that the defendant's constitutional rights under both the Federal and the State Constitutions were violated. The Supreme Court disposed of the constitutional questions by transferring the case to us for decision.

We have in Count I an ordinary assault and battery case and in Count II an assault and battery maliciously done. The facts are not complex. Plaintiff was a waitress in McCormick's Tavern and Restaurant on the day in question and was performing her duties in

374

waiting on the trade. Some fifty to sixty patrons were in the place with possibly one or two tables vacant. Plaintiff and the defendant were not acquainted and no conversation passed between them. At about eight o'clock p. m. defendant came into the restaurant with her little boy. Plaintiff heard her ask another waitress, one Dolores Nelson, if she might speak with her. Mrs. Nelson stated that she was too busy. Defendant then said, "You had better talk to me now." Plaintiff was standing with her back to a linen closet watching the trade. Mrs. Nelson was directly in front of her. Plaintiff heard a shot and heard Mrs. Nelson say, "Oh, My God." She heard another shot and felt a terrible pain in her left leg. She walked over to a doorway and "saw Mrs. Moran with a gun shooting at Mrs. Nelson."

When officer Swalgren arrived the two waitresses were on the floor. Mrs. Moran was at the bar. He asked her if she did the shooting and she said "yes." The gun was in defendant's purse. She turned and looked at the girl "in the hallway" and said, "The bitch isn't dead yet." The gun had been fired and there were six empty shells in the weapon. Officer Rogers testified to substantially the same things and that the defendant said, "Look, the bitch is still living." When asked the direct question neither officer would say as to whom the word "bitch" was directed. The gun was a Smith & Wesson 38.

■ Notwithstanding the fifty-eight assignments of error in the post-trial motion our consideration is limited to the three basic propositions briefed and argued in this court. Defendant first contends that proof of specific intent to harm the plaintiff is required to sustain the allegations in Count I of this complaint and that such evidence is wholly lacking. She argues that the only evidence indicates an intention to harm Mrs. Nelson and not the plaintiff. The position of the defendant is somewhat submarined by

respectable authority. In Illinois Law and Practice, Assault and Battery, Section 12 the rule is stated as follows:

> "Although it has often been said that intention to harm is the essence of an assault it is fairly clear from the cases that this statement should be restricted to assaults committed in the course of performing lawful, rather than unlawful, acts, for the rule is well established that in an action for assault, if the act occasioning the injury is unlawful, the intent of the wrongdoer is immaterial."

Prosser in his Handbook of Torts at page 33 states it this way:

> "If the defendant intends to commit an assault or battery upon a third person, but succeeds instead in causing unintended harmful or offensive contact with the person of the plaintiff, the latter may recover as though the act were intended to affect him. In the typical case, the defendant throws a stick at A or shoots at A and hits B instead. The intent is said to be 'transferred' to the victim—which is obviously only a fiction, or a legal conclusion, to accomplish the desired result of liability."

It seems abundantly clear to us that if the act of the defendant in the instant case was unlawful, Count I properly alleges, and the evidence establishes, a cause of action in the plaintiff.

 Defendant takes a like position as to Count II and argues that any willful, wanton or malicious conduct on the part of the defendant was directed against Mrs. Nelson and not the plaintiff. She suggests that the use of the word "bitch" does not show malice, even toward Mrs. Nelson. Her 46th assign-

ment of error in the post-trial motion is that she was not permitted to argue that the plaintiff failed to prove that Mrs. Nelson was not a "bitch." In her 58th assignment of error Par (e) defendant volunteers the information that Mrs. Nelson was improperly keeping company with defendant's husband. The evidence in the case is a factual desert on the subject. We think that we may take judicial notice of the fact that the term "bitch" may imply some feeling of endearment when applied to a female of the canine species but that it is seldom, if ever, so used when applied to a female of the human race. Coming as it did, reasonably close on the heels of two revolver shots directed at the person of whom it was probably used, we think it carries every reasonable implication of ill-will toward that person. "The term 'malice,' in ordinary usage, means ill-will against a person, but in the legal sense it means a wrongful act done intentionally, without just cause or excuse." Kemp v. Division No. 241, Ry. Employees of America, 255 Ill 213, 99 NE 389, 399. We think the evidence here shows that the shooting was a wrongful act, intentionally done and that there is no evidence remotely suggesting that the shooting was accidental, justified or with just cause or provocation. Posited in the factual atmosphere of this case, it is pure sophistry to suggest that there was no malice in the air at the time the trigger was pulled or that the shooting was not maliciously done.

■ Does this malice carry over to the plaintiff? We think it does. If there was malice behind the first shot that struck Mrs. Nelson there was malice behind the second shot, fired for the same purpose, that struck the plaintiff. It has been said that "proof of express malice is unnecessary and malice can be inferred from wanton and willful or reckless disregard of plaintiff's rights." Smith v. Georgeoff, 329 Ill App 444, 69 NE2d

377

525. We do not regard it as judicial sophistry to say that the firing of a Smith & Wesson 38 in a public eating place under the circumstances of this case was a wanton, willful and reckless disregard not only of the rights and safety of the plaintiff, but of the rights and safety of every person in the place. Malice generated the action of the defendant and the jury correctly so found. The plaintiff was wholly without fault. Long ago it was stated that, "it is common knowledge that when one person has a malicious intent against another and in carrying it out injures a third person, he is guilty of malice against the person he has injured; he has general malice. . . ." Coleridge, C. J., R. V. Latimer, 55 LJMC 136; 17 GBD 359, 54 LT 768. The malus animus of the defendant motivated the acts of the defendant originally and it permeated and contaminated their consequences.

Lastly, the defendant contends that there is a fatal variance between the allegations of the complaint and the proof in this case. This position is apparently grounded on the proposition that plaintiff's assault and battery is a derivative one and that the complaint should have charged and the evidence shown that it arose out of the unlawful acts of the defendant toward Mrs. Nelson. Absent such a charge in the complaint the defendant says she was precluded from pleading that the attack upon Mrs. Nelson was accidental, excusable, justified or provoked. No authority is cited for this proposition nor are we aware of any. These matters must ordinarily be pleaded and proved by the defendant in an assault and battery case. Galvan v. Torres, 8 Ill App2d 227, 131 NE2d 367. No reason appears why they should not and could not have been pleaded here, if any of them existed. We perceive no merit in the suggestion that they lacked materiality and for that reason could not

378

have been pleaded. If any or all. of them could or would have established that the acts of the defendant were lawful acts lawfully done they were material.

We are of the opinion that the defendant received a fair trial upon proper issues properly delineated and that the judgment of the trial court should be, and it is, hereby affirmed.

Affirmed.

McNEAL, P. J. and DOVE, J., concur.