Larry E. DAVIS, Plaintiff-Appellant,

v.

Michael P. LANE, et al.,
Defendants-Appellees.

No. 85–2304.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1986.

Decided March 10, 1987.

David B. Bayless, Kirkland & Ellis, Chicago, Ill., for plaintiff-appellant.

Thomas A. Ioppolo, Ill., Atty. Gen. Office, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and CUDAHY, Circuit Judges, and GORDON, District Judge.*

MYRON L. GORDON, District Judge.

Larry Davis, an inmate of the Stateville Correctional Center [Stateville], in Stateville, Illinois, who was shot by a Stateville guard, challenges the form of the district court's instructions to the jury on his federal and state law claims. Mindful as we are of the trial judge's discretion in charging the jury, we nevertheless find that there was an error in the instructions to the jury regarding the plaintiff's dual claims. Accordingly, we reverse and remand for a new trial. Moreover, on remand, we also direct the district court to reconsider its decision to direct a verdict in favor of the defendants on Mr. Davis' due process claim. We affirm, however, the trial court's decision to admit as demonstrative evidence a homemade knife, or "shank."

## I. BACKGROUND

On December 10, 1982, defendant Lt. Oscar H. Williams removed Mr. Davis from his cell and conducted a body search of the inmate following a fight between prisoners in which Mr. Davis was allegedly involved. During the search, Lt. Williams thought that he noticed something hidden in Mr. Davis' pants. A struggle ensued between Mr. Davis and Lt. Williams. Observing this struggle, the tower guard, Officer Victor Hull, fired a warning shot; Mr. Davis took the opportunity to run towards a nearby window. Still watching Mr. Davis, Officer Hull thought that he saw the inmate reach for something shiny, perhaps a homemade knife or "shank." Concerned that it might in fact be a shank, the tower guard fired another shot. This time the gun was

---

* Honorable Myron L. Gordon, Senior District Judge of the Eastern District of Wisconsin, is    sitting by designation.

aimed at Mr. Davis; the inmate was shot in the groin area.

Although he did not sustain any permanent injury, Mr. Davis spent several days being treated in a hospital outside of the prison, as well as several additional days recovering in the Stateville infirmary. After the shooting, a shank was found near the location where Mr. Davis had been shot; prison officials disposed of this shank shortly after they found it. Mr. Davis denies ever possessing a shank.

While Mr. Davis was recuperating in the prison infirmary, Stateville's adjustment committee held a hearing to determine what disciplinary action, if any, should be taken against the convalescing inmate. This hearing was conducted despite a request by Mr. Davis for a continuance to locate witnesses. After the hearing, the committee determined that Mr. Davis should be disciplined for the incident. Mr. Davis appealed this decision; his appeal resulted in an affirmance of the committee's decision in all respects except that the amount of good time loss originally imposed was reduced.

In addition to appealing from the adjustment committee's decision, Larry Davis filed the civil action that gave rise to this appeal against several Stateville officials. Mr. Davis claimed damages under both 42 U.S.C. § 1983 and Illinois tort law. Mr. Davis alleged that by shooting at him, Stateville officials used excessive force in violation of both his federal eighth amendment rights and the Illinois battery law. Mr. Davis further contended that the adjustment committee's refusal of his request for a continuance violated his procedural due process rights.

The matter proceeded to trial on December 4, 1984. On appeal, Larry Davis alleges that a series of errors occurred during the course of this trial. The issues he raises for our review are as follows: Whether the district judge erred in "merging" instructions on the plaintiff's federal eighth amendment and his state tort claims; whether the judge below improperly directed a verdict against him on his due process claim; and whether it was an abuse of discretion for the trial court judge to admit, as demonstrative evidence, a model of the shank Officer Hull claims to have seen before shooting at the plaintiff.

Although we are satisfied that the trial court judge did not abuse his discretion in admitting the demonstrative shank into evidence, we nevertheless are persuaded that the trial court failed adequately to instruct the jury on Mr. Davis' separate state law claim and failed adequately to support his decision directing a verdict for the defendants.

## II. ANALYSIS

### A. Admission of the Shank

A trial court's evidentiary decision will not be reversed unless it is shown to be a clear abuse of discretion. *See Charles v. Daley,* 749 F.2d 452 (7th Cir. 1984), *appeal dismissed sub nom., Diamond v. Charles,* —— U.S. ——, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986); *Gorby v. Schneider Tank Lines, Inc.,* 741 F.2d 1015, 1018 (7th Cir.1984). The trial court's balancing of probative value and unfair prejudice must be accorded "great deference." *West v. Love,* 776 F.2d 170, 174 (7th Cir. 1985) (quoting *United States v. Medina,* 755 F.2d 1269, 1274 (7th Cir.1985)).

Although there was conflicting testimony regarding Mr. Davis' possession of a shank, we are not persuaded that the shank was relevant, inadmissible evidence. The existence of a shank is clearly relevant to the question of the reasonableness of Officer Hull's reaction. *See* Rule 401, Federal Rules of Evidence (Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence ... more or less probable....."). Nor are we convinced that the demonstrative shank's probative value was outweighed by unfair prejudice contrary to Rule 403, Federal Rules of Evidence. The district court judge took several precautionary measures which satisfactorily eliminated any unfairness which may have inured to the plaintiff by virtue of the admission of the shank: The judge carefully admonished the jury to remember that Mr. Davis denied possession

of the shank. He also instructed the jury on the demonstrative nature of the shank and did not permit it to go into the jury room while the jurors were deliberating. Accordingly, we defer to the district court's decision regarding the admission of the shank as demonstrative evidence.

## B. Erroneous Jury Instructions

Both parties submitted jury instructions to the trial judge. The plaintiff tendered instructions regarding his state law battery claim, as well as to his federal eighth amendment claim. The district judge properly rejected the battery instruction as submitted because it did not include a provision regarding the defendants' affirmative defense of justification. The trial judge decided that no separate battery instruction was needed in view of his giving an eighth amendment excessive force instruction; accordingly, he refused to charge the jury separately with respect to the plaintiff's state law claim. His decision to submit merged instructions to the jury was made despite an objection by the plaintiff at the instruction conference. This ruling was subsequently reaffirmed by the district court when it denied the plaintiff's motion for a new trial on grounds of refusal to instruct the jury on the assault and battery claim.

We are persuaded that the district court's failure to submit separate federal and state law instructions constituted error because they have different characteristics and different burdens of proof. Eighth amendment claims under the United States Constitution and assault and battery claims under the laws of Illinois are distinct. "A prison guard's liability for the use of excessive force under 42 U.S.C. § 1983 is not co-extensive with the common law tort liability for battery." *Freeman v. Franzen*, 695 F.2d 485, 492 (7th Cir.1982), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983).

The distinction between these types of claims is perhaps most apparent in § 1983 cases involving relatively minor tortious conduct. The eighth amendment protection against cruel and unusual punishment is "nowhere nearly so extensive as that afforded by the common law tort action for battery." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Thus, some injuries are so minor that they "may not constitute a violation of the constitution but only amount to a state tort claim." *Ware v. Reed*, 709 F.2d 345, 354 (5th Cir. 1983). For this reason, the court of appeals for the fifth circuit has held that a trial court commits reversible error by failing to charge the jury with separate instructions on the plaintiff's state law battery and federal eighth amendment claims. *See id.*

Defendants' counsel urges us to disregard the reasoning applied in *Ware v. Reed*, *supra*, because, he explains, in the case at bar, unlike *Ware*, the conduct for which the plaintiff seeks relief is the use of deadly force; he also argues that the unjustified use of deadly force constitutes a common law tort, as well as a constitutional infraction so that, in this case the state and federal claims are in fact merged. Notwithstanding this factual distinction, we decline to read the *Ware* case so narrowly. The gravity of the conduct and the seriousness of the consequent inmate injury are but two of the factors courts consider in determining whether the use of physical force by a correction officer constitutes an eighth amendment violation.

In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm. *Johnson, supra*, 481 F.2d at 1033, *quoted with approval in Soto v. Dickey*, 744 F.2d 1260, 1268 (7th Cir.1984); *Lock v. Jenkins*, 641 F.2d 488, 496 (7th Cir.1981).

Ignoring all factors other than the amount of force used and the extent of the injury inflicted in distinguishing between federal constitutional and state tort claims

would require us to deprive an inmate, upon whom a prison guard has undertaken serious action, of an opportunity for direct adjudication of his state battery claim. The better course is to distinguish for the jury the separate common law and constitutional claims.

■ However, failure separately to so instruct would not of itself warrant reversal unless the instructions, considered in their entirety and in a common sense manner, misled the jury regarding the law. *See Ramsey v. American Air Filter Co., Inc.,* 772 F.2d 1303, 1312 (7th Cir.1985); *Wilk v. American Medical Association,* 719 F.2d 207, 218–19 (7th Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). Because we find that the district court judge's "merged" instructions failed to convey correct guidance regarding the burden of proof on the defendant's affirmative defense to the plaintiff's battery claim, we are persuaded that the merged instructions constitute reversible error.

■ The instructions proffered to the jury with regard to burden of proof covered only the plaintiff's eighth amendment claim. To prevail on an eighth amendment claim, a plaintiff bears the burden of proof on every element, including the burden of proving that the defendants acted *without* justification. On the contrary, however, under Illinois law, the burden of proof on justification for battery is on the defendants. *Parrish v. Donahue,* 110 Ill.App.3d 1081, 66 Ill.Dec. 860, 862, 443 N.E.2d 786, 788 (1982); *Smith v. Moran,* 43 Ill.App.2d 373, 193 N.E.2d 466, 469 (1963). Failure to instruct on this state law burden of proof is reversible error. *Winn v. Inman,* 119 Ill. App.3d 836, 457 N.E.2d 141, 457 N.E.2d 141, 144–45 (1983). We are not persuaded by defendants' counsel's unsupported assertion on oral argument that this burden allocation is not applicable when the claimant is a prisoner; our research reveals no such distinction.

If the jury had been given instructions properly describing the allocation of the burdens of proof, it may well have affected the jury's disposition of Mr. Davis' battery claim. The jury arrived at their decision only after lengthy deliberations over the course of three days. Despite the common facts, there is no true merger of the federal and state claim in this matter, *see Johnson, supra,* 481 F.2d at 1033. Thus, although the jury determined, after lengthy consideration, that Mr. Davis did not satisfy his burden of proof on each element of his eighth amendment claim, we cannot assume that, given correct instructions as to the burden of proof on his battery claim, the jury would not have also found that the state similarly failed to meet *its* burden on its justification defense.

■ The defendants contend that although an objection was made with regard to the trial court's merger instructions, such instructions may not now be challenged on appeal because the plaintiff failed to submit proper instructions as to either the battery justification defense or as to the correct corresponding burdens of proof. On an issue central to a case, it is the trial court's responsibility to charge the jury with the correct applicable law. *Celanese Corp. v. Vandalia Warehouse Corp.,* 424 F.2d 1176, 1181 (7th Cir.1970). The district court is not relieved of this duty simply because the parties fail adequately to educate the court. *See Alloy Int'l Co. v. Hoover–NSK Bearing Co.,* 635 F.2d 1222, 1226 n. 7 (7th Cir.1980) ("The fact that counsel did not tender perfect instructions does not immunize from scrutiny on appeal a failure to instruct the jury adequately concerning the issues in the case."). In this case, the defendants advanced a justification defense to the plaintiff's battery claim, and the trial court was obliged to provide the jury with a correct charge on this important aspect of the case.

## C. Directed Verdict on Due Process

At the close of the plaintiff's case, the defendants moved for a directed verdict on the plaintiff's due process and state law claims. The trial court granted the motion for a directed verdict, but only with respect to the plaintiff's procedural due process claim. Mr. Davis contests the latter determination and, in light of our conclusion

that a new trial is necessary in this case on grounds of erroneous jury instructions, we agree that the district court's determination on this matter should also be reconsidered.

In reviewing a trial court's decision to dispose of a claim by a directed verdict, we must examine the underlying evidence in a light most favorable to the nonmoving party. *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 511–12 n. 5 (7th Cir.1986); *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1410 (7th Cir.1984). All conflicts in the evidence must be resolved in favor of the nonmoving party. *Yarbrough, supra,* 789 F.2d at 511–12 n. 5. In this case, Mr. Davis' due process claim is premised primarily on his assertion that the adjustment committee improperly denied his request for a continuance. Mr. Davis also sets forth his concerns regarding a delay in the transmission to him of a hearing summary from the committee, but we are not persuaded that the delay in transmission unreasonably infringed upon Mr. Davis' due process protections.

■ However, we find that the denial of his request for a continuance may have been inconsistent with due process protections afforded inmates in prison disciplinary hearings. The essence of due process is notice and an opportunity to be heard. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) the Court held that due process considerations apply to prison disciplinary hearings. The Court has also held that inmates should be permitted to call witnesses and present documentary evidence in their defense unless such an allowance would jeopardize institutional safety. *Id.* at 566–67, 94 S.Ct. at 2979–80. *See also Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985).

■ *Wolff* imposes a single, yet important limitation on an inmate's procedural due process rights in prison proceedings; such rights are contingent upon institutional safety. In oral argument, counsel for the defendants asserted that such safety considerations precluded the continuance that Mr. Davis requested; however, the record does not reveal that this factor was in fact articulated to the plaintiff, nor considered by the district court in arriving at its directed verdict. *See Transcript* pp. 432–44. The only reason expressed by the trial court in granting the defendants' motion for a directed verdict was that Mr. Davis, upon requesting a continuance to gather witnesses, was unable to name the witness that he planned to call. This reason alone is an insufficient basis on which to deny Mr. Davis his right to be heard effectively. Mr. Davis may have needed the continuance not only to gather witnesses, but to also determine who such witnesses would be. Although it is possible that concerns for safety at Stateville would preclude the type of witness search Mr. Davis proposed, there is no support in the record for this possibility. Thus, we are unable confidently to affirm the trial court's directed verdict.

## CONCLUSION

Although we find that no error was committed by the trial court's decision to admit a demonstrative shank as evidence in this matter, we nevertheless are persuaded that the court erred in failing to provide the jury with separate instructions as to Mr. Davis' state and federal claims and also in directing a verdict for the defendants as to the plaintiff's due process claim relating to his request for a continuance. Accordingly, the decision of the district court is AFFIRMED IN PART AND REVERSED IN PART. We remand this case for further proceedings consistent with this opinion. Seventh Circuit Rule 18 shall not apply.