9 F.3d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Dwayne WALKER, Plaintiff-Appellant,
v.
Rodney AHITOW, et al., Defendants-Appellees.
 No. 92-2981.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 26, 1993.[1]
Decided Nov. 15, 1993.
 
 Before POSNER, Chief Judge, and RIPPLE, and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Dwayne Walker appeals from a district court order entering summary judgment in favor of defendants in this suit filed pursuant to 42 U.S.C. § 1983. Plaintiff contends that the court erred in denying his motion to compel discovery and in finding defendants were entitled to summary judgment on the issues of excessive force, cruel and unusual punishment, deliberate indifference to this medical needs, procedural due process, and personal involvement of warden Ahitow.
 
 
 2
 In regard to the denial of plaintiff's motion to compel discovery, we will not disturb a ruling on discovery absent an abuse of discretion. Olive Can Co., Inc. v. Martin, 906 F.2d 1147, 1152 (7th Cir.1990). After reviewing the record, the availability to Walker of the sought after documents (medical records, disciplinary records, incident reports and work orders), and the information needed for the summary judgment determination, we find no abuse of discretion. We also note that Walker was made aware that under 20 Ill.Admin.Code § 107.420 (1992), medical records will be released upon a written request, or that if he made an appointment with the Health Care Administrator he could view the records.
 
 
 3
 As to the remaining claims raised on appeal,[2] we agree with the district court that they lack merit, and therefore affirm its decision for the reasons expressed in the attached district court order.
 
 
 4
 AFFIRMED.
 
 ATTACHMENT
 
 5
 Dwayne WALKER, Plaintiff,
 
 
 6
 v.
 
 
 7
 Rodney AHITOW, et al., Defendants.
 
 ORDER
 
 8
 JOE B. McDADE, District Judge.
 
 
 9
 The plaintiff, a state prisoner, has brought this civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, various correctional officials, violated the plaintiff's constitutional rights by denying him access to the courts, by using excessive force against him, by acting with deliberate indifference to his medical needs, and by subjecting him to race discrimination. This matter is before the court for consideration of the parties' cross-motions for summary judgment. For the reasons stated in this order, summary judgment will be granted in favor of the defendants.
 
 
 10
 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir.1984), cert. denied, 470 U.S. 1028 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." Black v. Henry Pratt Co., 778 F.2d 1278, 1281 (7th Cir.1985).
 
 
 11
 However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359 (7th Cir.1988).
 
 FACTS
 
 12
 The following facts are undisputed; in fact, the court has gathered most of the facts from the complaint: The plaintiff is a state prisoner, confined at the Illinois River Correctional Center (IRCC) at all times relevant to this action. The plaintiff has a long history of disciplinary reports regarding "assaultive, abusive, non-complaint, destructive [and unsafe behavior] at IRCC." The defendants Birkey, Fisher and McVicar are correctional officers at the institution; Ahitow is the prison's warden. The defendant Meade is a nurse employed at the prison. The defendant Upsinger is a staff electrician. The plaintiff is black; all of the defendants are white.
 
 
 13
 On or about September 17, 1990, the plaintiff gave some legal papers to the law librarian for photocopying. The law librarian (who is not a defendant in this action) told the plaintiff that she did not have time to copy the documents at that time, but promised to return the photocopied documents the next day.
 
 
 14
 When the plaintiff had not received his papers by seven o'clock the next morning (September 18, 1990), he began to ask correctional officials about the "missing" documents. The defendant Fisher, who looked into the matter, assured the plaintiff that he would get his papers back by the end of the day.
 
 
 15
 In frustration over the missing documents, the plaintiff set a small fire in his cell. The defendants Fisher, Birkey, McVicar, and other officers not parties to this lawsuit responded to the fire. The defendants ordered the plaintiff from his cell and placed him in a stripped-down, glass observation cell. The plaintiff was given his wheelchair[1], religious ankh, and bedding, but none of his other property. Some of the property, such as a asthma spray and nerve stimulator, was medical in nature; additionally, certain property items were never returned.
 
 
 16
 Shortly after the plaintiff was placed in the observation cell, Fisher attempted to close the chuckhole door.[2] However, angry over the denial of certain personal property, the plaintiff refused to remove his arm from the food slot so that the chuckhole could be closed. After repeatedly ordering the plaintiff to move his arm,[3] Fisher finally forced the arm back, in the process twisting the plaintiff's arm and scraping the skin. Fisher did not provide the plaintiff with any medical attention or ice for his injury.
 
 
 17
 In response, the plaintiff plugged his toilet, flooding the cell. Fisher then ordered that the plaintiff's water source be turned off. Additionally, Fisher wrote an incident report and issued the plaintiff a disciplinary report concerning the matter.
 
 
 18
 Later that day, the plaintiff declared a "hunger strike." The plaintiff told the defendant Meade, who was distributing medication that evening, that he wished to see a doctor. (The parties dispute whether the plaintiff told her, or anyone else, that he had sustained an injury or that he was bleeding internally.) The plaintiff was given his medication, but was not seen by a doctor.
 
 
 19
 On September 19, 1990, the plaintiff removed the face plates from his wall outlet and shorted the electricity in the entire segregation cell block, ostensibly in an effort to obtain medical treatment. As a consequence, the defendants McVicar, Birkey and Upsinger physically removed the light, outlets and wires from his cell. The plaintiff's power was not restored until September 24, 1990.
 
 
 20
 That same morning, the plaintiff was taken to the health care unit and seen by a team of specialists from the Comprehensive Hemophilia Center of Peoria, Illinois, including a hematologist, a physical therapist, a social worker, and a registered nurse. The plaintiff was thoroughly examined and given medication for his ailments.
 
 DISCUSSION
 
 21
 Even viewing the record in the light most favorable to the plaintiff, the court finds that the defendants are entitled to judgment as a matter of law. The plaintiff was not denied meaningful access to the courts. Nor is there a triable issue that the plaintiff was subjected to cruel and unusual punishment. The record does not raise an inference that the defendants acted with deliberate indifference to the plaintiff's serious medical needs, used excessive force against him, or forced him to endure unconstitutional conditions of confinement. Furthermore, the plaintiff's lost property claim does not state a due process violation. Finally, the plaintiff's conclusory equal protection claim is wholly unsupported. The court finds that the plaintiff is responsible for the consequences of his own behavior.
 
 
 22
 The brief delay in the processing of the plaintiff's photocopying request did not deny him access to the courts. It is undisputed that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). To prevail in a case alleging denial of access to the courts, however, a plaintiff must show prejudice. See, e.g., Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir.1987); Bruscino v. Carlson, 854 F.2d 162, 167 (7th Cir.1988), cert. denied, 491 U.S. 907 (1989). Here, the plaintiff has failed to show either intentional impediment to his court access, or injury.
 
 
 23
 In the case at bar, the plaintiff was required to wait only one day to have his legal papers photocopied and returned. The librarian could not return the papers until the library closed because she was not allowed to leave other inmates unsupervised. (Fisher affidavit) The defendants' good faith is demonstrated by the actions of Fisher, who went to retrieve the plaintiff's papers for him; Fisher was interrupted en route to the library by a report that the plaintiff set a fire in his cell. The plaintiff's apparent near-hysteria when his copy request had not been processed by 7:00 the following morning was both unreasonable and unjustified.
 
 
 24
 Regardless, the plaintiff has not shown any detriment caused by the brief delay. To the contrary, the plaintiff admitted in his deposition that he did not have a court deadline to meet. Because the plaintiff is unable to show some quantum of detriment to pending or contemplated litigation, his court access claim cannot survive summary judgment.
 
 
 25
 The defendants are entitled to summary judgment on the plaintiff's Eighth Amendment claims as well. Turning, first, to the plaintiff's use of force claim, the court finds that the plaintiff's allegations are not of constitutional dimension. A prison guard's liability for the excessive use of force under 42 U.S.C. § 1983 is not co-extensive with common law tort liability for battery. Davis v. Lane, 814 F.2d 397, 400 (7th Cir.1987).
 
 
 26
 The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.
 
 
 27
 Id., quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir.1973), cert. denied, 414 U.S. 1033 (1973), holding limited to Eighth Amendment context by Graham v. Connor, 490 U.S. 386 (1989).
 
 
 28
 In determining whether pain was unnecessarily and wantonly inflicted, the court examines the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted. Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Here, the plaintiff admits that he disobeyed at least two direct orders to remove his arm from the chuckhole. (Complaint; depo at 15) Furthermore, even accepting as true that Fisher did threaten to break the plaintiff's arm, he actually caused only minor injury in twisting and scraping the plaintiff's arm. Even assuming that Fisher was unnecessarily rough when he forced the arm back through the slot, the matter did not amount to a constitutional violation.
 
 
 29
 Likewise, no reasonable person could find that the defendants acted with deliberate indifference to the plaintiff's serious medical needs. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care...." Id. at 104-05. Here, the plaintiff has failed to establish that he was denied needed medical care.
 
 
 30
 The plaintiff alleges that he requested medical treatment because he was bleeding internally, presumably after Fisher scraped his arm. (The plaintiff is a hemophiliac.) Each of the defendants Meade, Martin and Fisher[4] denies that the plaintiff requested medical treatment of them or anyone in their presence; in addition, the court questions whether the plaintiff, a layman, was capable of detecting internal bleeding. A minor scrape evidencing little blood (see plaintiff's depo at 17) would not appear to be of the gravity contemplated by Estelle. Regardless, the plaintiff's medical records reflect extensive medical care during the period in question, both by institutional health staffers and by outside specialists. (See Medical Records of September 18, 19, and 20, 1990; affidavit of Director of Medical Records Patricia Henshaw)[5] The record could not support a finding that the defendants acted with deliberate indifference to the plaintiff's medical needs.
 
 
 31
 The plaintiff, furthermore, has failed to establish that he was subjected to cruel and unusual conditions of confinement. The plaintiff's placement in a "fishbowl" segregation cell [a cell with a glass observation window, see Fisher, McVicar affidavits] was certainly justified in light of the plaintiff's uncontained and destructive behavior. Causing even a small fire in the segregation unit, where all inmates are locked in their cells, poses a potential of great disaster. In fact, the plaintiff was able to continue misbehaving even after being placed in a better monitored cell; the court gathers that Fisher was required to spend most of his day supervising the plaintiff.
 
 
 32
 The plaintiff's uncontrolled havoc similarly warranted the temporary deprivation of property items. Within minutes after being placed in segregation, the plaintiff was bouncing his forty-pound wheelchair off of the glass observation in an apparent effort to shatter the glass, causing thunderous noise.[6] Furthermore, the plaintiff had already set fire to papers in his possession, and may have been throwing objects out the chuckhole. The defendants did not violate the plaintiff's constitutional rights by withholding property until the plaintiff calmed down.[7]
 
 
 33
 Accepting as true that some of the property was never returned to the plaintiff, that matter nonetheless is not actionable in this court. The plaintiff does not indicate who is responsible for the loss; even if the named defendants intentionally deprived the plaintiff of his property, the plaintiff has no federal, constitutional cause of action. The Illinois Court of Claims provides the plaintiff with an adequate remedy to redress his property loss.
 
 
 34
 The State of Illinois has provided that persons who have been deprived of property through the actions of the state or its employees acting in their official capacity may seek compensation for their injury through the Illinois Court of Claims. Ill.Rev.Stat. ch. 37, par. 439.1, et seq. (1989). Alternatively, the plaintiff has the option of filing an action in state circuit court for the tort of conversion. See Greco v. Guss, 775 F.2d 161, 169 (7th Cir.1985). Because the State has provided an adequate postdeprivation remedy, the loss of the plaintiff's property does not present a due process violation. Flower Cab Co. v. Petitte, 685 F.2d 192, 193-94 (7th Cir.1982).
 
 
 35
 The plaintiff's charge of "sensory deprivation" is equally without merit. The defendants removed the wiring from the plaintiff's cell only after he shorted the wiring in the entire segregation unit and caused the administration building to lose power. The plaintiff's actions jeopardized his own safety and security, as well as that of others. The plaintiff boasted to other inmates that he had "a new trick with the cable" and intended to repeat what he had done. (McVicar affidavit)[8] The court therefore will defer to the defendants' judgment that cutting off the plaintiff's power was a necessary precaution. It would seem that the plaintiff, who was in a glass-front observation cell, must have had some light in his cell. In any case, the six-day deprivation of electrical light in his cell did not amount to a constitutional violation.
 
 
 36
 For the same reasons, the plaintiff cannot denounce the purported violation of his constitutional rights when his water was turned off. The defendants were forced to cut off the plaintiff's water source because, as the plaintiff admits, he intentionally flooded his cell. Through his own recalcitrant and unmanageable behavior, the plaintiff was directly responsible for each of the deprivations which he faced.
 
 
 37
 There is no triable issue of fact as to whether the plaintiff was the victim of race discrimination. Prison officials may not, of course, distribute benefits or burdens on the basis of impermissible factors such as race or religion. See Madyun v. Thompson, 657 F.2d 868, 874 (7th Cir.1981). However, the record is devoid of facts from which a reasonable person could conclude that the actions taken against the plaintiff were racially motivated. The mere fact that the plaintiff is black and the defendants white is insufficient to support a finding that the plaintiff was disciplined due to his race. See Davis v. Frapolly, 717 F.Supp. 614 (N.D.Ill.1989). To the contrary, as discussed in preceding paragraphs, the plaintiff's own admissions reveal ample reason for restricting the plaintiff's ability to defy prison order and discipline. The plaintiff's conclusory allegation of an equal protection violation is unsupported by facts and therefore cannot survive summary judgment.
 
 
 38
 Finally, regardless of the merit of the plaintiff's claims, the plaintiff has not stated a cause of action against the defendant Ahitow. The plaintiff has alleged no facts establishing Ahitow's direct, personal involvement, as required by Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir.1981). Nor has the plaintiff shown that the alleged violation of his constitutional rights occurred at Ahitow's direction or with his knowledge and consent. See Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir.1982). The mere fact that Ahitow was the warden at IRCC is insufficient to establish liability, as the doctrine of respondeat superior (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. See Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983); Adams v. Pate, 445 F.2d 105 (7th Cir.1972). Because the plaintiff has failed to show that Ahitow was personally involved in the alleged circumstances giving rise to the complaint, Ahitow is entitled to summary judgment.
 
 
 39
 In summary, no material facts are in dispute, and the court concludes that the defendants are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, the plaintiff has not established a triable issue that the defendants violated his constitutional rights. The plaintiff was not denied meaningful access to the courts. Nor could a reasonable person find that the plaintiff was subjected to cruel and unusual punishment. Furthermore, the plaintiff's lost property claim does not state a due process violation. Finally, the plaintiff's conclusory equal protection claim is wholly unsupported. All of the defendants' actions constituted reasonable responses to the plaintiff's own misbehavior. Regardless, the plaintiff has not stated a cause of action against the defendant Ahitow.
 
 
 40
 IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment (docket # 53) is denied.
 
 
 41
 IT IS FURTHER ORDERED that the defendants' motion for summary judgment (docket # 43) is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed.R.Civ.P. 56. The case is terminated. The parties are to bear their own costs.
 
 
 42
 Enter this 4th day of August, 1992.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [2]
 Plaintiff does not raise the claims of access to the courts or racial discrimination in his brief, and therefore we need not adopt those portions of the district court's order
 
 
 [1]
 The plaintiff claims to suffer from several diseases and maintains that he is confined to a wheelchair
 
 
 [2]
 Throughout their brief, the defendants state that the plaintiff precipitated the measure by throwing objects through the food slot. However, nothing in the defendants' affidavits or the plaintiff's deposition supports that assertion
 
 
 [3]
 And threatening to break the arm, according to the plaintiff
 
 
 [4]
 Fisher concedes that the plaintiff requested ice for his arm; however, Fisher was of the opinion that the request was a disguised attempt to get the hatch door opened again
 
 
 [5]
 Contradicting his medical records, the plaintiff asserts that he did not receive medical care on September 18, 1990. Even were the court to believe the plaintiff, the one-day delay in receiving medical care did not amount to a constitutional violation
 
 
 [6]
 Regardless of whether the plaintiff actually intended to break the glass, the possible effect of his actions can be inferred. Furthermore, the court will disregard the plaintiff's assertion in his affidavit that Fisher neither heard the noise nor saw the plaintiff smiling. The plaintiff has no personal knowledge what Fisher may have heard or seen
 
 
 [7]
 The complaint raises an implicit claim regarding the denial of certain personal property items which the plaintiff owned "for medical reasons." However, the plaintiff alleges no injury resulting from the deprivation of asthma spray and nerve stimulator
 
 
 [8]
 The plaintiff points out that one of the defendants' affidavits puts the date at September 18, 1990. The court deems the matter a simple typographical error, and not, as the plaintiff asserts, "perjury."