108 F.3d 1392
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
David J. INSTANCE, Plaintiff-Appellee,
v.
ON SERTS SYSTEMS, INC., and Longford Equipment
International, Ltd., Defendants-Appellants.
 96-1112
 United States Court of Appeals, Federal Circuit.
 Feb. 21, 1997.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
March 26, 1997.
 
 Before MAYER, Circuit Judge, COWEN, Senior Circuit Judge, and RADER, Circuit Judge.
 RADER, Circuit Judge.
 
 
 1
 On Serts Systems, Inc. and Longford Equipment International, Ltd. (On Serts), appeal an order of the United States District Court for the Northern District of Illinois sustaining a jury's finding that On Serts had infringed a patent owned by Appellee, David J. Instance. Because this court finds no error in the district court's denial of On Serts's alternative motions for judgment as a matter of law or a new trial, this court affirms.
 
 
 2
 * Instance owns U.S. Patent No. 4,860,080 (the '080 patent), entitled "Apparatus for Producing Labels." The '080 patent describes a device for gluing product information booklets onto a roll of pre-cut, pre-processed, and self-adhesive labels. This roll of labels is sometimes referred to as the web. Because the patented device applies glue to the individual labels and matches booklets with the labels at a high rate of speed, synchronicity is an absolute necessity. Small distortions at this high speed can cause cumulative errors and throw the entire process out of whack. A slight problem quickly can cause the device to misapply the glue onto the machinery itself. The '080 patent uses sensors to coordinate the moving parts of the system and to ensure accurate application of the glue on the web despite any systemic imperfections.
 
 
 3
 On Serts manufactures and sells equipment for placing labels on booklets. This accused device also uses a sensor and encoders to ensure the proper application of glue and connection to the labels. The On Serts device uses a web sensor to detect the position of the labels. Based on the position information, the device conveys a signal to either accelerate or decelerate the conveyor carrying the booklets. In addition, a booklet sensor controls the timing of adhesive application. Significantly, the glue applicator operates in coordination with the original web sensor. Simply, as labels register with the web sensor, this information controls the pace that the lug conveyor presents booklets. The pace of the labels controls the pace of the booklets. And the pace of the booklets, in turn, controls the glue applicator.
 
 
 4
 Instance became aware that On Serts had sold a potentially infringing machine and filed an infringement suit on September 6, 1991. After a two week trial, the jury returned a verdict in favor of Instance, finding that On Serts had infringed the patent literally and under the doctrine of equivalents. In addition, the jury found that On Serts had contributorily infringed the '080 patent and had induced infringement of the patent by a third party. Finally, the jury found that On Serts had done all of these acts willfully.
 
 
 5
 The trial court entered a final judgment and permanent injunction on June 19, 1995. On Serts then moved for judgment as a matter of law or, in the alternative, a new trial. The district court denied On Serts's motion, resulting in this appeal.
 
 II
 
 6
 On appeal, On Serts argues that the district court's claim construction was erroneous, and no infringement can be found under On Serts's proffered construction. Because the parties dispute the meaning of terms in the claims of the patent, this court reviews the district court's order under Markman v. Westview Instruments, Inc., 116 S.Ct. 1384 (1996). The claim language, of course, defines the bounds of claim scope. Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 619-20, 34 USPQ2d 1816, 1819 (Fed.Cir.1995) ("First, and most importantly, the language of the claim defines the scope of the protected invention."). "To determine the meaning of disputed claim terms, however, a construing court may consider other sources, including the patent specification and the administrative record leading to patent issuance. These additional sources may provide context and clarification about the meaning of claim terms." York Products, Inc. v. Central Tractor Farm & Family Center, 99 F.3d 1568, 1572, 40 USPQ2d 1619, 1622 (Fed.Cir.1996) (citation omitted); see also Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1561, 19 USPQ2d 1500, 1503 (Fed.Cir.1991). While extrinsic evidence may also be considered in claim construction, no such evidence was considered here.
 
 
 7
 Claim 1 of the '080 patent, the only claim at issue, states:
 
 
 8
 Apparatus for producing a succession of self-adhesive labels carried on a backing of release material, the apparatus comprising:
 
 
 9
 means for conveying along a pathway a laminar material comprising a succession of label base portions, each of which is coated on its reverse side with a pressure sensitive adhesive, and having a backing of release material;
 
 
 10
 detecting means situated along the pathway for detecting a succession of particular locations which are spaced along the length of the laminar material;
 
 
 11
 an adhesive applying station situated along the pathway and including an adhesive applicator, which is operable in response to the means for detecting, for applying a layer of adhesive to a particular area on each label base portion;
 
 
 12
 a label applying station situated along the pathway downstream of the adhesive applying station, the label applying station including label applying means, which are operable in response to the means for detecting, for successively applying individual pre-printed labels to respective successive layers of adhesive so that a pre-printed label covers each area of each label base portion to which adhesive has been applied.
 
 
 13
 (Emphasis added.) This appeal focuses on the meaning of elements and .
 
 
 14
 The parties offer conflicting interpretations of "operable in response to," the pertinent phrase in the relevant elements. Instance favors the construction of the district court. The district court, in the form of jury instructions,
 
 
 15
 determined that the words 'operable in response to', as they are used in claim 1 of the '080 Patent, do not imply that a specific control means is being claimed. In other words, if the web sensor in [On Serts's] label system causes a response in the operation of the adhesive applicator, that adhesive applicator may be found to be operable in response to the web sensor.
 
 
 16
 (Emphasis added.)
 
 
 17
 On Serts, on the other hand, suggests a different and narrower construction. On Serts argues that the adhesive applicator is only "operable in response to" the detector when the sensor initiates the operation of the adhesive applicator either "immediately or after a predetermined delay of time." Because the accused device does not contain a web sensor that initiates the operation of the glue applicator immediately or after a predetermined delay of time, On Serts argues that this fact precludes literal infringement.
 
 III
 
 18
 On Serts's claim construction rests on an importation into the claims of limitations from the embodiments in the specification. See Intervet America, Inc. v. Kee-Vet Labs., Inc., 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989) (stating that limitations from the specification should not be read into the claims); Sjolund v. Musland, 847 F.2d 1573, 1581, 6 USPQ2d 2020, 2027 (Fed.Cir.1988) ("[W]hile ... claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims...."). In this case, "operable in response to" has a definite meaning without recourse to the specification for clarification. This claim term is not so amorphous a term that the court can only reconcile the claim language with the inventor's disclosure by recourse to the specification. See E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433, 7 USPQ2d 1129, 1131 (Fed.Cir.1988) (stating that the specification can supply understanding of unclear claim terms, but should never trump the clear meaning of claim terms).
 
 
 19
 Thus, the claim terms define the bounds of the patentee's property right. Stiftung v. Renishaw PLC, 945 F.2d 1173, 1177, 20 USPQ2d 1094, 1098 (Fed.Cir.1991) ("Claim interpretation must begin with the language of the claim itself.") (citing Smithkline Diagnostics, Inc. v. Helena Laboratories Corp., 859 F.2d 878, 882, 8 USPQ2d 1468, 1472 (Fed.Cir.1988)). In this case, the term "operable in response to" defines broadly the relationship between the various components of the claimed device. Broad terms, however, are not necessarily indefinite. Contrary to On Sets's assertion, this drafter did not choose either of the more limiting phrases "directly operable in response to" or "immediately operable in response to." Instead, as the district court correctly determined, "if the web sensor in [On Serts's] off-line system causes a response in the operation of the adhesive application, that adhesive applicator may be found to be operable in response to the web sensor." (Emphasis added.) The district court's instruction thus comports with the meaning of the claim language.
 
 IV
 
 20
 The specification of the '080 patent also supports the district court's claim construction. In the preferred embodiment, for example, a START sensor detects the leading edge of the label. The specification then describes the action of the adhesive applicator in relation to the sensors: "When the START sensor 24 detects the said given point, an electrical signal is sent therefrom to initiate the operation of the adhesive applicator 30, either immediately or after a predetermined delay of time." This description is repeated for the STOP sensor. Reinforcing this reading, the specification continues:
 
 
 21
 It will be apparent to those skilled in the art that the separation of the START sensor 24, STOP sensor 26 and adhesive applicator 30, as well as any time delays in initiating and terminating the operation of the adhesive applicator 30, can be varied as desired.
 
 
 22
 (Emphasis added.) Clearly, in this embodiment, the sensor causes a response in the operation of the adhesive applicator. This response can vary according to the desires of the operator.
 
 
 23
 The specification offers an additional embodiment:
 
 
 24
 [I]nstead of employing a START sensor 24 and a STOP sensor 26, the apparatus can employ a START sensor 24 which is coupled to an encoder.... When the START sensor 24 detects the given point on a respective label base portion 16, an electrical signal is sent to the encoder which acts to measure the distance travelled [sic] by the moving web from a given start position. After the web has travelled [sic] a prescribed distance, the encoder activates the adhesive applicator 30 for a given period.
 
 
 25
 In this embodiment, the distance traveled by the web determines the length of the glue application. In this embodiment, the response is measured in terms of distance traveled by the web instead of in terms of time elapse. This difference, however, is mostly semantics. At a constant rate of speed, a predetermined distance is equivalent to a predetermined period of time. Still another embodiment explicitly states that the START sensor 24 and the STOP sensor 26 may detect printed marks which activate initiation or termination responses in the application of adhesive. Each of these embodiments describe relationships between the adhesive applicator and the sensor properly described by the concept of "operable in response to."
 
 
 26
 The specification sheds similar light on the words "operable in response to" with respect to the application of the booklet to the label. The fourth element of the claim requires that the label applying means is "operable in response to" the sensors. Once again, the specification provides numerous references to the operation of that particular element. For example, like the activation of the adhesive applicator, the sensor "initiates the operation of the adhesive applicator 30, either immediately or after a predetermined delay of time." These statements from the specification reinforce the district court's interpretation of the claims.
 
 V
 
 27
 Next, On Serts challenges the jury's finding of infringement. On Serts primarily bases its challenge on its reading of the claim language, which conflicts with the district court's reading. Because we sustain the district court's claim interpretation, this court need only address a single remaining argument: Whether a reasonable jury could have found that the accused device contains an equivalent label applying means.
 
 
 28
 In reviewing the jury's finding of infringement, this court will disturb the jury's determination only if, on the record before the jury, reasonable jurors could not have found infringement. Thus, this court reviews the record for substantial evidence in support of the jury's verdict. Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1571, 1 USPQ2d 1081, 1084-85 (Fed.Cir.1986). Substantial evidence is such relevant evidence, in the record as a whole, as might be accepted by a reasonable mind as adequate to support the verdict under review. Id.; see Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446, 1454-55, 223 USPQ 1161, 1166-67 (Fed.Cir.1984).
 
 
 29
 In finding that On Serts infringed the '080 patent, the jury must have concluded that the accused device meets the label applying means limitation in the fourth element. Literal infringement of an means-plus-function element requires that the means in the accused device performing the stated function is the same or equivalent to the corresponding structure performing the function described in the patent specification. See D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1575, 225 USPQ 236, 239 (Fed.Cir.1985).
 
 
 30
 Both parties agree that the ram performs the label applying function. At trial, Instance provided evidence that the lug conveyor on the accused device provided the label applying means. On Serts argued that its device applied labels through the use of nip rollers. On appeal, On Serts argues that no reasonable jury could have concluded that the lug conveyor is equivalent to the ram.
 
 
 31
 In support of its contention, On Serts cites to testimony given by its expert, Mr. Luciano. However, this court will not substitute its judgment for that of the jury to select between alternative supportable bodies of evidence. Instead, this court looks for sufficient evidence of record to support the jury's determination. In this search, this reviewing court considers the evidence in the light most favorable to Instance. Under this standard, as stated by the district court, "the jury reasonably accepted the testimony of [Instance's] technical and legal experts that the ram and the lug conveyor are functionally equivalent under 35 U.S.C. § 112."
 
 VI
 
 32
 Finally, in addition to its arguments concerning claim construction and infringement, On Serts argues that the district court made numerous errors in its jury instructions. First, On Serts argues that the jury was improperly instructed on the means-plus-function aspect of the label applying means in the fourth claim element. Second, On Serts argues that the district court skewed the jury instructions in favor of Instance. In reviewing the district court's denial of On Serts's motion for a new trial, this court examines the content of jury instructions for prejudicial legal error. Delta-X Corp. v. Baker Hughes Prod. Tools, Inc., 984 F.2d 410, 415, 25 USPQ2d 1447, 1450 (Fed.Cir.1993). A new trial will be ordered only when errors in the instructions as a whole clearly misled the jury. Id. at 415.
 
 
 33
 With regard to section 112, para. 6, the district court provided the following instruction to the jury:
 
 
 34
 Where a patent claim defines a component of the invention as a "means" for performing a certain function ... the claim should be construed to cover not just the specific means described in the patent specification, but also any equivalent structures.
 
 
 35
 On Serts requested that the instruction include an additional sentence defining "equivalent": "For this purpose, an equivalent is an insubstantial change which adds nothing of significance to the structure disclosed in the patent." The district court declined to include this additional language, and On Serts objected. On appeal, On Serts argues that the district court committed reversible error in failing to instruct the jury as to the definition of equivalents under section 112.
 
 
 36
 On Serts relies on Valmont Industries, Inc. v. Reinke Manufacturing Co., 983 F.2d 1039, 25 USPQ2d 1451 (Fed.Cir.1993), as support for its suggested language. In Valmont, the court noted that "[i]n the context of section 112 ... an equivalent results from an insubstantial change which adds nothing of significance to the structure ... disclosed in the patent specification." Id. at 1043. The court proceeded to state that an equivalence determination under section 112 "involves [a] comparison of the structure in the accused device which performs the claimed function to the structure in the specification." Id. Reading the jury instructions as a whole, this court cannot say that absence of the single sentence advocated by On Serts amounts to reversible error. See Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 854, 20 USPQ2d 1252, 1255 (Fed.Cir.1991) (stating that reversible error exists in jury instructions if "read in their entirety were incorrect or incomplete as given").
 
 
 37
 Finally, On Serts insists that the jury instructions unfairly favored Instance. Specifically, On Serts argues that the district court erred in not instructing the jury of the limits to patent protection. The cases cited by On Serts are easily distinguishable. See, e.g., Davis v. Lane, 814 F.2d 397, 401 (7th Cir.1987) (reversible error in jury instructions that incorrectly allocated the burden of proof). Once again, reading the jury instructions as a whole, this court finds the district court did not commit reversible error.
 
 VII
 
 38
 Because the district court properly construed the claims of the '080 patent, and the jury's finding of infringement is supported by substantial evidence, this court affirms.